## Sergeant's Heirs *versus* Ewing.

A judgment recovered against the executors of a decedent, though not con-
clusive, is *primâ facie* evidence of the amount of the debt, in a *scire facias*
against the heirs, for the purpose of charging the decedent's real estate in
their hands.

To a *scire facias* against the heirs and devisees of a decedent, for the
purpose of charging the real estate with a debt recovered against the execu-
tors, the defendants pleaded, that the plaintiff presented his petition to the
Orphans' Court for a citation to the executors to account; that, in pursuance
thereof, a citation was issued, and an account filed; that an auditor was
appointed to settle and adjust the account and report distribution; that the
plaintiff did not appear and present his claim before the auditor, whose report
was subsequently confirmed, and the balance in the hands of the executors
was, under the decree of the Orphans' Court, paid over to the parties entitled
thereto under the will of the testatrix (who were the defendants in the *scire
facias*): *Held*, that the facts pleaded constituted no bar to the plaintiff's right
to recover his claim out of the real estate devised.

Sergeant's Executors *v.* Ewing, 6 *Casey* 75, affirmed.

An account presented to a party indebted, by a creditor, and corrected by
the parties, is an account stated, and binding upon the representatives of the
debtor, as to items not objected to by the decedent.

The record of a recovery for mesne profits, is evidence to rebut a set-off, for
property taken from the premises which were the subject of the former action.

CERTIFICATE from the Court of *Nisi Prius*.

This was a *scire facias* by Jacob O. Ewing against the executors
and devisees of Elizabeth B. Sergeant, deceased, for the purpose
of charging the real estate of the testatrix with a judgment reco-
vered against the personal representatives. The case against the
executors was before this court, and is reported in 6 *Casey* 75.

To the *scire facias* the defendants pleaded *non assumpserunt*,
the statute of limitations, *plene administraverunt*, no assets, pay-
ment with leave, &c., and the following special plea:—

"And the said defendants, for a further plea in this behalf, by
leave of the court, &c., say that said plaintiff ought not to have
execution of his said judgment of the lands and tenements which
were of the said Elizabeth B. Sergeant, because they say that
heretofore, to wit, on the 23d day of July, A. D. 1853, at the
county aforesaid, the said plaintiff filed his certain petition in the
Orphans' Court of the county of Philadelphia, in which the said
Elizabeth B. Sergeant died, and in which county her will was
admitted to probate and filed, and letters testamentary granted
upon her said estate by the register of wills, which petition was
in the matter of the estate of the said Elizabeth B. Sergeant, and
set forth, *inter alia*, that said plaintiff was a creditor of the estate
of the said Elizabeth B. Sergeant; that her surviving executors,
the said William S. Blight and J. Dickinson Sergeant, had not

[Sergeant's Heirs *v.* Ewing.]

filed their accounts, though more than a year had elapsed since they had taken out letters testamentary, and praying for a citation to said executors, commanding them to file their accounts of said estate: Whereupon, the court granted the prayer of said petition, and awarded a citation accordingly, which citation was duly issued and served upon said executors, who, in compliance with the requisition thereof, did afterwards, to wit, on the 21st day of October 1853, file in the office of register of wills in and for said county, a full and final account of their administration of the personal esta*t*e of the said Elizabeth B. Sergeant, showing a large balance for distribution; and due notice of the filing of said account having been given, according to law, to all persons interested, and duly proved, and said account having been certified in due form and course to the said Orphans' Court, the said court referred said account to an auditor, to audit, settle, and adjust the same, and report distribution; which said auditor having given like and legal notice, to all parties interested, of his said appointment, and of the purposes thereof, and of the time and place where he would sit for said purposes, did, at said place and at said time, and by adjournment from time to time, and at divers other times, sit as such auditor for the purposes aforesaid, to hear the parties interested in said estate, and to take proof of, hear, and decide upon all claims against the same, and with full power so to do according to law and the acts in such case made and provided; and having so, after due notice as aforesaid, sat and heard all parties who appeared before him, and taken proof of, heard and decided upon all claims against said estate; and the said plaintiff, with full notice and knowledge of the appointment of said auditor, and the purposes thereof, and of his sitting as aforesaid, not having appeared before him, or made any claim against said estate, the said auditor did make or award, and did report to said Court a full and complete distribution of the whole of said estate to and among the creditors and legatees of her, the said Elizabeth B. Sergeant; and the said award and report of the said auditor were subsequently, to wit, on the 3d day of March, A. D. 1854, by the final decree of said Orphans' Court, confirmed absolutely; and said decree of confirmation now, still is and remains in full force and effect, and not reversed or vacated, as by the record and proceedings thereof remaining in said Orphans' Court more fully appears; and these defendants further aver, that payment and distribution were made by them before the issuing of the original writ of summons in this case, in pursuance of said report, and according to the terms thereof, and of the said decree confirming the same; and the said defendants further in fact say, that at the time of the said issuing of the said original writ of summons in this case, the said personal estate of the said Elizabeth B. Sergeant, so distributed as aforesaid, had been distributed to and was vested in the

[Sergeant's Heirs *v.* Ewing.]

executors of the said Mary V. Blight, then deceased, who was the sole legatee of the said Elizabeth B. Sergeant, deceased, subject to her debts and the commissions of her said executors, and the real estate was vested in the devisees of her the said Mary V. Blight, who was also sole devisee of the said Elizabeth B. Sergeant, deceased, and this the said defendants are ready to verify; wherefore they pray judgment, if the said plaintiff ought to have or maintain his aforesaid action against the said record, and the force and effect thereof," &c.

To this special plea, there was a demurrer; upon which, the court gave judgment for the plaintiff.

On the trial, the plaintiff having given in evidence, notwithstanding an objection by the defendants, the record of the recovery against the personal representatives, the defendants put in evidence the accounts with the plaintiff, found among Mrs. Sergeant's papers, at her decease, and attempted to falsify them in respect to a charge, under date of 5th July 1848, of $3000 for cash paid note in Bank of Commerce, and $47.50, discount on note. The plaintiff, on the call of the defendants, produced the note for $3000, and it appeared by the books of the Bank of Commerce, that it was discounted for him on the 19th April 1848, and the proceeds carried to his private account. Mrs. Sergeant was not credited with these proceeds, the plaintiff contending that it was a business note given for value, but what the consideration of it was, he was unable to remember.

The defendants also gave in evidence the record of an ejectment against the plaintiff, for a part of the real estate of Mrs. Sergeant. They also gave evidence to prove that at the time of executing the writ of *habere facias*, the plaintiff had taken from the premises, hay, corn, horses, wagons, &c., the value of which they claimed to set off.

In answer to this, the plaintiff, under an exception by the defendants, gave in evidence the record of an action against him for mesne profits, in respect to the premises recovered in the ejectment. He also proved, that the account, containing the items attempted to be disproved, had been presented to Mrs. Sergeant in her lifetime, and had been examined and corrected by her, and her grandson Mr. Blight, who acted as her man of business.

The learned judge (Woodward, J.) instructed the jury, that the verdict and judgment in the former action against the executors, were *primâ facie* evidence of the plaintiff's claim, and imposed on the defendants the burden of disproving it. And in respect to the note for $3000 he said—" If it was a business note, that is, if Mrs. Sergeant being indebted to Mr. Ewing, and finding it inconvenient to pay, made him this note in satisfaction of the debt, it was her duty to pay it at maturity, and if he paid it to the bank to save a protest of his name as endorser, he was entitled to

[Sergeant's Heirs *v.* Ewing.]

charge both the note and the discount of it to Mrs. Sergeant's account. But there is a pregnant circumstance on the other side. If the jury believe the evidence, these accounts were presented to Mrs. Sergeant at a time much nearer to the date of the note than the present. They were examined by her and her grandson Mr. Blight, who acted as her man of business; an error of $300 was discovered, which Mr. Ewing corrected as soon as his attention was called to it, and then Mr. Blight expressed his satisfaction with the account as stated. That account so examined, corrected, and approved, contained a plain charge of this $3000 note. 'It is impossible to suppose that a lady of intelligence, however little she may have known of book-keeping, or that a man of common sense, could not understand this charge. The correction of the only mistake complained of, would imply satisfaction with all the rest of the account. And if they did understand and assent to the account, as presented and corrected, it was in effect an account stated, and the jury should hold the parties to it."

To this instruction the defendants excepted; and a verdict and judgment having been rendered for the plaintiff for $16,256.74, they certified the cause to this court, and here assigned for error: 1. The charge that the recovery against the executors was *primâ facie* evidence of the plaintiff's claim: 2. The ·judgment on the demurrer: 3. The charge in respect to the note: 4. The admission in evidence of the record of the action for mesne profits.

*E. Spencer Miller* and *Meredith*, for the plaintiffs in error.— Under the Act of 1834, the heirs have a right to defend on original grounds; as to them the suit is a new one, and the former verdict is no evidence of indebtedness against the real estate: Christman's Executrix *v.* Evans, 13 *S. & R.* 14·; Atherton *v.* Atherton, 2 *Barr* 112; Schwartz's Estate, 2 *Harris* 45; Sample *v.* Barr, 1 *Casey* 459; Walthaur's Heirs *v.* Gossar, 8 *Id.* 262. They also cited to the same point, Shaeffer *v.* Kreitzer, 6 *Binn.* 430; King *v.* Diehl, 9 *S. & R.* 420; Hyslop *v.* Crozier, 1 *Miles* 267;· Humphreys *v.* Kelly, 4 *Rawle* 306; Sample *v.* Coulson, 9 *W. & S.* 62; Mason *v.* Peter, 1 *Munf.* 445; Duvall *v.* Green, 4 *Har. & Johns.* 270; Harwood *v.* Rawlings, *Id.* 126; Birely *v.* Staley, 5 *Gill & Johns.* 433; Vernon *v.* Valk, 2 *Hill, Ch.* 261; McCoy *v.* Nicholass, 4 *How.* (*Miss.*) 38; Gilman *v.* Tisdale, 1 *Yerg.* 285; Alston *v.* Munford, 1 *Brock.* 276; Norris's Appeal, 6 *Casey* 128; Field *v.* Oberteuffer, 2 *Phil. R.* 271.

*Geo. Junkin, Jr., H. M. Phillips*, and *S. H. Perkins*, for the defendant in error.

The opinion of the court was delivered by

[Sergeant's Heirs *v.* Ewing.]

THOMPSON, J.—Was the judgment on which this *sci. fa.* issued *primâ facie* evidence of the debt against the devisees of Mrs. Sergeant's estate? It was a judgment recovered against the personal representatives, and this *sci. fa.* was issued to bring in the heirs and devisees, pursuant to the 34th section of the Act of 24th February 1834, preliminary to charging the realty with the debt recovered against the executors.

There was no denial, by plea, of the existence of the judgment, but there was of the debt in every form, as well as a plea of no assets, payment with leave, &c., set-off, &c., and a special plea setting up proceedings in the Orphans' Court as a bar.

The question is raised, although not for the first time, for determination, whether the judgment against the personal representatives was evidence for any purpose in the case. The judge at Nisi Prius (Mr. Justice WOODWARD) ruled, that it was *primâ facie* evidence, and so charged the jury. This, of course, threw the plaintiffs on their affirmative pleas for defence, and failing in these, there was a recovery against the executors and devisees for the amount of the original judgment with interest.

To have determined the point in any other way would certainly have been a great surprise upon the profession in Pennsylvania, if not something worse. Ordinarily, one personal action is conclusive between the parties to it, and nothing but a just sense of the danger to parties interested, as heirs or devisees in the real estate of a decedent, ever superinduced the relaxation of the rule in any degree; but to hold, that a creditor, who has, after a severe and prolonged contest, established his right to satisfaction out of the personal assets, but finds in the end that they are insufficient for the purpose, and that he must enter *de novo* into the same contest with the heirs—must produce anew his proofs and witnesses, perhaps scattered and lost sight of, under the expectation that they would never be needed again, is something in practice which has not been thought necessary for the last twenty years at least. Indeed, it seemed to have been thought here, that, although the statute of limitations may not have been a bar to a recovery of the entire or parts of the claim, when the original judgment was obtained, yet that a maturing statutory bar strengthened on apace, unobstructed and unaffected by that recovery. That cannot be possible, when we recollect how the old law stood, and the mischief intended to be remedied by the Act of 1834. Before that act, both the real and personal estate were alike liable, in their order, to satisfy judgments obtained against the personal representatives of a decedent. In no other respect, excepting as to the duration of lien, was there any difference. Judicial experience, and sense of justice, exposed the imperfection of the existing law, and the danger to heirs and devisees, in the negligence, or collusion between the personal representatives (oftentimes strangers to

them) and claimants against decedents' estates, and in Christman's Executrix v. Fritz's Administrator, 13 *S. & R.* 9, gave such expression to the regret, that there was not a law "that their lands should not be affected by any proceedings to which they were not made parties by a notice to come in and plead, either collaterally, or in the name of the executor," (per GIBSON, C. J.) as effectually awakened public attention to the subject. In that case, the court permitted the heir, as a party in interest, to defend.

In accordance with these suggestions, the Act of 1834 was passed. It was, perhaps, a just criticism to denominate the 34th section of the act a "bungling enactment," for although it provided that "in all actions against executors or administrators of a decedent who shall have left real estate, where the plaintiff intends to charge such real estate with the payment of his debts, the widow and heirs or devisees, and the guardians of such as are minors, shall be made parties thereto," it left the time when they were to be made parties, and what they might do when so made parties, entirely indefinite. These deficiencies, however, were supplied by the court, by a rule announced in Murphy's Appeal, 8 *W. & S.* 165, and reasserted and followed in Benner v. Phillips, 9 *Id.* 15, Atherton v. Atherton, 2 *Barr* 112, Schwartz's Estate, 2 *Harris* 42; Stewart v. Montgomery, 11 *Id.* 411; Sample v. Barr, 1 *Casey* 457, Shontz v. Brown, 3 *Id.* 136, Walthaur's Heirs v. Gossar, 8 *Id.* 259, and in M'Laughlin v. McCumber *antè* 14, determining that where the widow and heirs or devisees were not made parties to the action against the personal representatives, they should be warned by *scire facias*, before the realty could be charged with the debt, to show cause, if any they had, why the judgments should not be a charge or lien against the realty; permitting them, as was said in Murphy's Appeal, and in substance in every case since, "to go behind the judgment, and make any defence which it would have been competent for them to have set up in the original suit, if they had been made parties to it." "Permitting them to do this," Mr. Justice KENNEDY further remarks, "would seem to be giving them *all* that the legislature could have intended by the 34th section of the act, as it leaves them without even the shadow of ground of complaint." In Atherton v. Atherton, it was said, that the object of bringing them in, "was to enable them to contest the lien, or *disprove* the debt;" and in most of the cases on the subject, it is, either directly or inferentially, declared that the original judgment is not conclusive as to the existence of the debt against the estate, and that the heirs are free to "contest it on original grounds." That is to say, unaffected and unobstructed by the precedent judgment. This is all that was meant by this form of expression. It had been a familiar resort in Pennsylvania, where

no court of chancery existed adequate to restrain the execution of a judgment at law, when there was a good equitable defence, to do equity by opening the judgment and letting the party in to make such defence as he alleged existed. In such a case, the party so let in had the burden of proving his case in the first instance,—this was but equitable towards the party holding the judgment which he had once established. This practice shadowed the practice adopted in the instance in hand. The widow and heirs were allowed to do the same thing without opening the judgment. The *sci. fa.*, it was held, permitted a defence to the debt, so far as they were concerned, on original grounds, as also on grounds secondary or subsequent to the judgment. It was much, to be relieved against a conclusiveness which formerly existed, and to be allowed an opportunity to defend on substantial grounds; it would be more, and not quite so just, to be allowed all the advantage of the loss of papers, death of witnesses, statutory bars, and the thousand damaging contingencies incident to delays in acquiring satisfaction from a decedent's estate. The decisions noticed on this point have established a practice directly against this, and in accordance with which the cause was ruled below.

If we were announcing the rule for the first time, that the judgment was evidence, we might elucidate it, by considering the nature of the action or proceeding. The *sci. fa.* recites a judgment, and calls upon the parties to it, and those required to be named, to show cause why the lien should not be continued, and execution should not be had of the lands belonging to the estate. The judgment is the foundation for the *sci. fa.*; it is a record; it is recited in the *sci. fa.* which stands for the *narr.*; and if it could not be read, it would present the anomaly of a cause of complaint which could not, and need not be answered, by the parties required or called on to answer it. The only anomaly about the matter exists in the fact, that the judgment is not conclusive in regard to all matters included in it, but this results from the statute, and the form of the remedy against heirs and devisees. To effectuate the legislative intent, it became necessary, under the evident requirement of the law, to give them a day in court, and that whenever they were not parties to the original action, they were not concluded by it, but might show wherein, in whole or in part, it should not bind the realty. Further than this the courts and the practice have not gone, and we but adhere to both, when we hold, as does our Brother WOOD-WARD at Nisi Prius, that the judgment against the executors of Mrs. Sergeant was *primâ facie* evidence of the plaintiff's debt against the devisees in the case on trial, and we see no error in the ruling on this point.

The second assignment of error relates to the demurrer to the special plea. The court sustained the demurrer, and overruled the

[Sergeant's Heirs *v.* Ewing.]

plea. To have sustained the plea would, in effect, have been to determine that the plaintiff was bound to submit his claims to the auditor appointed by the Orphans' Court to make distribution, and to contest the matter there with the executors who had refused to recognise them. When this case was here before (6 *Casey* 75), we decided that the Orphans' Court had not exclusive jurisdiction of disputed claims against an estate, and we are of the same opinion still. But it is said, that the matter is now in a different position— that the plea is by the heirs. Grant that it is so. The proceedings do not operate by way of estoppel—that we have decided. It can hardly be pretended, that they extinguished the debt .in fact, *pro tanto*, for the distribution took place during and before the controversy between the plaintiff and the executors was determined, (in which it was entirely denied), and without his act or sanction. They do not operate to extinguish the lien as against the realty; to give them that effect would be, to allow them to operate as an extinguishment of the debt, while, in contemplation of law, the money still remains in the hands of the executors to meet debts, even if it had all been paid to the legatee; for the decree of distribution did not authorize them to pay it over without a refunding bond: Pry's Appeal, 8 *Watts* 253. And, moreover, the right to the lien, unaffected by time or a release, is as valid as it is to the debt itself.

Besides all this, the fact is conceded, that the legatee and devisee was one and the same person, and although, perhaps, the plea does not in fact admit this, it may as well be so treated, as it would necessarily appear on another trial, if the controversy made it material that it should so appear. This being so then, the plea is by the representative of the party who was to receive the legacy, and whose property, as residuary devisee, was to pay the debt. In equity, therefore, there is not a shadow of ground for complaint, and it is, in that aspect, the complaint comes. If, on application for an order to sell real estate to pay the judgment, the representative of the residuary devisee wish to limit the order of the court to a portion of the estate necessary to satisfy the debt, less the amount of the legacy alleged to have been paid to the executor of their testator, they must return that sum, and then the order will go for the residue. It is not pretended that the money in the hands of the executors at the date of the decree of distribution, was sufficient to pay the debts, including the plaintiff's claim. Undoubtedly, the Orphans' Court may, and generally do, withhold or refuse an order of sale, until the personalty is exhausted in payment of debts—and this might call for a resort to the refunding bonds of legatees. But where the legatee and devisee is the same person, the court would hardly entertain such a process. It is, however, not necessary to determine this.

Be this as it may, it seems to me, that the existence of money,

inadequate to the discharge of the plaintiff's demand, in the hands of the executors, at some time during the pendency of the controversy to recover the debt, is no ground for refusing judgment to bind the realty. We must not blend this right with the remedy for satisfaction. The latter is under the power of the court, and it does not follow, that because the realty is bound by the judgment, it must go in satisfaction of the debt. It will only do so, on failure of the primary fund for payment, the personalty, notwithstanding the judgment—this the law amply provides for. That the personalty might eventually reach to a satisfaction of the debt, is not a reason why a party may not have his judgment secured by the realty. Such a doctrine has not yet received judicial sanction, and yet it is the essence of this defence. We do not assent to it. The matter of increased commissions and expenses does not change the plaintiff's rights. But, indeed, we do not see the force of the complaint in this case. If these were increased by paying over money to the legatee that should have gone to this debt, the fault was participated in by the party now complaining, in receiving it.

We see no error in the charge about the $3000, which is the third error assigned. As to this item of discount, the court did not rule it as a question of law, although there is an expression of opinion about it, but the judge put that as well as the note to the jury, on the evidence constituting an account stated, in which they were unobjected items, accompanied by instructions that if the account containing these items was presented, and examined, corrected, and returned as approved by Mrs. Sergeant and her agent, "it was in effect an account stated, and the jury should hold the parties to it." Many authorities sustain this instruction: 1 *Harris* 313; 3 *Id.* 236; 1 *Jones* 418; 7 *Barr* 281. There was no proof of mistake in regard to the note and discount as charged in the bill. Inferences against them as proper charges, it is true, were attempted, but the presumption of assent arising from the account rendered, its examination, correction in other particulars, and return, stood against that. The court left all the evidence in regard to these items, as charged against Mrs. Sergeant, to the jury, telling them, that the facts in evidence in regard to them, were peculiarly within their province, accompanied by the remark arising from the evidence in regard to the accounts having been rendered and returned unobjected to, as to the note and discount, already referred to. This was all fair and proper. If there were omissions to present any particular aspect of the case, thought to be important by the defendants, it is not error to be complained of by them, as they did not pray for the particular or specific instruction. We can, under such circumstances, only deal with the instructions given, not those omitted.

As to the fourth assignment of error. It has not been shown

[Sergeant's Heirs v. Ewing.]

wherein there was any error in the admission of the record of the action for mesne profits. The defendants had attempted to claim a set-off for certain property taken from a farm which they had recovered in ejectment from the plaintiff. The record of the action for mesne profits was in answer to this claim, and to show that there had been a recovery for some of that property. This evidence was held to have been properly admitted when the case was last before this court (6 *Casey* 75).

We see nothing else in the case which calls for special notice, and as none of the errors assigned are sustained, the judgment must be affirmed.

Judgment affirmed.