Birdsall-Friedman Company, Appellant, *v.* Globe and Rutgers Insurance Company.

Argued January 12, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Arthur S. Arnold,* for appellant.

*Adolph Eichholz,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 29, 1937:

The parties to this action are engaged in the insurance business. The plaintiff, until the fall of 1932, was the resident agent in this state of the defendant, which is an insurance company of the State of New York, authorized to transact business in Pennsylvania.

The plaintiff brought this action in equity for an accounting to ascertain and recover commissions alleged to be due from defendant. It concedes that the terms of its agency contract with defendant do not confer upon it a right to the commissions claimed, but contends that a recognized trade custom, together with the provisions of the Act of May 17, 1921, P. L. 682,[1] require neverthe-

---

[1] The Act of May 17, 1921, P. L. 682, Article V, Section 501, provides, in part, as follows:

"No stock fire insurance company, association, or exchange, not incorporated under the laws of this State, authorized to transact business herein, shall make, write, place, or cause to be made, written, or placed, any policy, duplicate policy, or contract of insurance of any kind or character, or any general or floating policy

less the payment to it of a 10% commission upon the premiums of all insurance which the defendant placed in this state.

The relation between the parties is of long standing. In 1906, J. T. Birdsall, the plaintiff's predecessor, by written contract became the defendant's Pennsylvania agent. The term of the agency was for one year, and continued thereafter from year to year. In 1921 Birdsall organized the plaintiff corporation, and the agency contract was assigned to it. By the contract the plaintiff was entitled to a five per cent commission upon net premiums remitted monthly, and a further profit of fifteen per cent upon all contingent commissions.[2] The agreement obligated the defendant annually to compute and submit to plaintiff a statement of the contingency account. It appears from the testimony that this obligation was complied with over a period of years, it being the practice of the parties to settle their accounts annually on July 31 of each year, when a new year began.

During the existence of the agency, the defendant, through other agents or brokers, placed many contracts of insurance in Pennsylvania without the assistance of the plaintiff. However, to comply with the requirements of the Act of 1921, supra, the defendant would forward to the plaintiff for approval and counter-signa-

---

upon property situated or located in this State, *except after the said risk has been approved in writing by an agent who is a resident of or whose principal place of business is in this State, regularly licensed to transact insurance business herein, who shall countersign all policies so issued, and receive the commission thereon when the premium is paid,* to the end that the State may receive the taxes required by law to be paid on the premiums collected for insurance on all property located in this State. . . ."

[2] Contingent commissions were computed upon the net premiums remitted by the plaintiff to defendant less (1) losses incurred by the company upon risks insured through the agency; (2) agency expenses, including taxes, commissions and license fees, except that contingent commissions could not be earned upon risks reinsured by the company.

ture the policies arising from the insurance contracts so negotiated. The plaintiff would thereupon countersign the policies and return them to the defendant. In many instances the plaintiff would countersign policies in blank, and was not aware of the names of the insured, the property insured, or the premiums paid. The plaintiff admits that although this practice continued for many years, it never made claim in its annual settlements, or received compensation for such countersigning of the policies placed directly through the home office. It appears from the evidence that no compensation therefor was ever requested by plaintiff until 1927, to which request the officers of the defendant gave an evasive answer.

The testimony indicates that on or about November 26, 1929, the parties verbally agreed to operate under the commission rates established by the Eastern Underwriters' Association Agreement, except that if the commissions payable to the plaintiff thereunder were less than those which would have been earned under the agreement of 1906, the plaintiff was to be paid the difference as compensation for countersigning home office policies, this arrangement to become effective as of August 1, 1929.

For the year ending July 31, 1930, the new rates caused the plaintiff to receive a lower return, and it accepted payment from the defendant for the difference in commissions, the check received indicating the purpose of the payment. For 1931 the difference was in favor of the plaintiff, resulting in a greater return to it, so that no adjustment was required under the modified agreement.

The plaintiff does not deny that its agency contract contains no provision entitling it to make claim to the commissions it seeks to recover. It contends, however, that even in the absence of a specific agreement the Act of 1921, supra, imposes an obligation upon the defendant to pay the commissions claimed, and that a custom

in the insurance business fixes that commission at the rate of 10 per cent.

The court below decreed that an accounting be made to plaintiff only for the period from July 31, 1931 to October 7, 1932 (when the agency was terminated) on the basis of the agreement of 1929 between the parties; that in the accounting no commissions or compensation be allowed plaintiff for countersigning home office polices in blank. From the final decree dismissing its exceptions, plaintiff has taken this appeal.

The plaintiff and the defendant have placed an interpretation upon the rights of plaintiff under the contract which makes it clear that it was not the intention of the parties that plaintiff was to receive special commissions for approving and countersigning the so-called home office policies. The long continued course of dealing between the parties with annual settlements, accepted by the plaintiff without any demand for the commissions now claimed, leads to the conclusion that the parties did not contemplate or agree that there should be payment for these services. The contract was so construed by them for many years, and this interpretation cannot now be disregarded. The supplemental agreement of 1929 indicates that, prior to that year, the plaintiff's commissions on the general business of the agency was considered to be its compensation for approving policies placed directly by the defendant, and that after 1929 its compensation for so countersigning policies was to be the differential, if any, between the old basis of compensation under the agreement of 1906, and the new rates established by the supplemental agreement. This compensation, except for the period from July 31, 1931 to October 7, 1932, it has already received.

As the parties to the contract upon which this action is brought have interpreted it themselves, the law will assume that construction represents the true understanding of the parties: *Coleman v. Grubb*, 23 Pa. 393; *Peoples Nat. Gas Co. v. Braddock Wire Co.*, 155 Pa. 22;

*Kendall v. Klapperthal Co.,* 202 Pa. 596; *Beedy v. Nypano R. R. Co.,* 250 Pa. 51; *Fisher v. Ronemus,* 267 Pa. 325; *Daub's Est.,* 313 Pa. 35; Restatement, Law of Contracts, Section 235(e).

Moreover, it is well settled that where there are mutual matters of account between parties arising from a contract, and the party shown to be the debtor either pays the debt or delivers an obligation for its payment, the settlement so made is conclusively binding upon the parties concerning the matters so adjusted, except upon convincing proof of fraud or mistake: *Ruch v. Fricke,* 28 Pa. 241; *Sergeant's Heirs v. Ewing,* 36 Pa. 156; *Leinbach v. Wolle,* 211 Pa. 629.

The requirement of Article V, Section 501 of the Act of 1921, supra, adds nothing to the rights of the plaintiff. We cannot agree with the contention of plaintiff that the provisions of the Act coupled with a certain trade custom, require the payment of a 10% commission, in the absence of an expressed understanding to that effect. The argument of the plaintiff would be more persuasive if the Act specified the rate of commission to be collected. The absence in the Act of a specific requirement, concerning the rate to be paid permits the parties to fix for themselves the rate of commission and method of payment. There is no requirement of public policy preventing the parties from so grading the rates of commission on other types of business, that the return received therefrom would be sufficient to compensate the agency for countersigning home office policies as well. The primary legislative purpose was to secure the payment of taxes due the Commonwealth, and here there are no taxes shown to be in default.

In our opinion the plaintiff, if ever entitled to an accounting, has delayed so long the assertion of its rights that now, to direct one would constitute an injustice and hardship to the defendant. The plaintiff offers no explanation to excuse this delay. We dismiss the suggestion that the friendly relations between the parties jus-

tify delaying the assertion of rights believed to be valid and valuable. Nor does the request by the plaintiff made in recent years that it be allowed such commissions, and the disinclination of the defendant to discuss the subject, relieve the plaintiff from the charge of laches.

The assignments of error are overruled, the decree appealed from is affirmed, and the record is remanded so that an accounting may be made in conformity with the decree of the court below. Each party shall pay its own costs.