BRODERICK v. TRAVELERS INS. CO. et al.

No. 11901.

United States Court of Appeals Ninth Circuit.

. . June 30, 1949.

Ezra R. Whitla and E. T. Knudson, Whitla & Knudson, Coeur d'Alene, Idaho, for appellant.

Charles Horowitz, Seattle, Wash., and Wm. S. Hawkins, Coeur d'Alene, Idaho (Preston, Thorgrimson & Horowitz, Seattle, Wash., of counsel), for appellees.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

This case was here on an earlier occasion under the title Ware v. Travelers Ins. Co. et al., 9 Cir., 150 F.2d 463. The appeal then was from a judgment dismissing the complaint on the ground of the unconstitutionality of the statute on which the action is based. We reversed in the belief that the statute is not invalid and remanded the cause for hearing on the merits. After the case went down the defendants (appellees) answered and there was a trial resulting in findings and judgment in their favor, D.C., 73 F.Supp. 354. The facts, already stated in part in our former opinion and more fully in the opinion of the trial court, will be set out here only to the extent necessary to clarify the discussion.

Ware, originally the plaintiff but since deceased, was a licensed insurance agent doing business in Kootenai County, Idaho. He had a contract or contracts as resident agent with appellees, who are associated Connecticut insurance companies authorized to transact business in Idaho. The main contract, entered into in 1936, obligated the companies to pay to Ware "on policies issued * * * *on proposals secured by or through the agent,* as full compensation for all services and full reimbursement for all expenditures," commissions amounting to stated percentages of the premiums paid [emphasis ours]. It authorized the countersigning by Ware of policies pertaining to the line of insurance

covered by his contract. This contract was modified in 1940 to the extent of providing, among other things, that on risks written on a retrospective basis [a term hereafter explained] the commissions which the agent might retain out of premiums "will be fixed on the basis of the individual risk, anything in your Agency Agreement to the contrary notwithstanding." A collateral agreement, made in 1936, provided in effect that Ware was to be paid a monthly remuneration of $5.00 for countersigning policies issued on Idaho risks in the case of proposals for insurance secured outside the state, not procured by Ware.

The claim in suit is for commissions at the rate of 10% of the standard premiums on five policies in the procurement of which Ware had no part. The claim is not predicated on the contracts, but on an Idaho statute, § 40-902, Idaho Code of 1932, as amended by Chapter 61, Idaho Session Laws of 1939, shown on the margin.[1] The transactions involved, as developed in the trial court's findings, are as follows: In May of 1942 appellees placed in the state of New York, through a New York brokerage concern acting as insurance advisor of the Walter Butler Company, three insurance policies, including Workmen's Compensation, covering the construction by the Butler Company of the Farragut Naval Station in Kootenai County. As required by the Bureau of Yards and Docks having jurisdiction of the construction contract, the insurance was issued under a comprehensive insurance rating plan for national defense projects, this being a form of retrospective or experience rating under the terms of which the final premiums for the policies were determined after the

[1] "It shall be unlawful for any foreign insurance company doing business in this state to make, write, place or cause to be made, written or placed in this state any policy, bond, duplicate policy or contract of insurance of any kind or character, or any general or floating policy upon persons or property, resident, situated or located in this state, unless done through an agent who is a resident of this state, legally commissioned and licensed to transact insurance business herein. A resident agent shall countersign all policies so issued (except policies of life insurance) and shall receive the full commission when the premium is paid, except **when said policy is made, written or placed by a licensed broker, in which event the countersigning agent shall receive a commission of not less than five per cent of the premium paid:** * * * provided, this section shall not apply to life insurance companies." [Emphasis supplied.]

The boldfaced portion of the statute was incorporated by the 1939 amendment.

696

completion of the operations, on the basis of certain fixed charges and the composite losses developed under the policies.[2] The plan neither contained nor contemplated any provision for payment of commissions to a producing agent, and no commission was in fact paid by appellees to anyone in connection with the procurement of the business.[3] Later two additional policies were issued to the Walter Butler Company on a standard premium basis covering a minor operation in the same county. The earned premiums on the latter policies, as we understand the findings, totaled about $114, and were paid to appellees through the Butler Company's insurance advisor, This insurance, also, was written in New York.[4] Ware countersigned each of the first three policies and indemnity bonds appertaining to them, and also countersigned the two small policies referred to. The trial court found that he was paid for his countersigning service pursuant to the monthly compensation agreement above mentioned. The evidence indicates that he had nothing to do with the servicing of any of the policies, that task being handled independently.

Before considering the statute on which appellant places her reliance it should be noted that the concluding portion of it, boldfaced in the quotation in footnote 1, is inapposite. This clause relates to the right of the countersigning agent to receive a commission of not less than five per cent where the policy is placed by a licensed broker. The term "licensed broker" would seem clearly to mean an Idaho licensed broker. Appellant's complaint alleges that the policies "were written by the Company direct to the Walter Butler Company and were written and placed with the Walter Butler Company and that the plaintiff acted as countersigning agent direct and not through any licensed broker." The cause appears to have been tried below on the theory of the complainant that the clause mentioned is not germane to the case. See trial court's opinion 73 F.Supp. at page 357 of the published report. There is, besides, no evidence that the policies were submitted by a licensed broker.

The district judge thought that the policies were made, written or placed in Idaho within the intendment of the statute, since the final act in their execution was the countersigning of them by Ware. He recognized, also, the possibility that the war projects insurance rating plan, under which this insurance was written, was not a permissible method of writing insurance on Idaho risks inasmuch as it was set up with the thought of avoiding payment of commissions. But he was of opinion that in any event the statute affords no basis for a judgment in appellant's favor.

Two purposes undertaken to be effected by the statute are plainly expressed, one being a prohibition against the writing in the state by foreign insurance companies of policies on Idaho risks unless "done" through a licensed resident agent, the other being a requirement that such policies be countersigned by a resident agent. The court thought that both these provisions were complied with since the resident agent was called upon to countersign the policies. Beyond these provisions the legislative intent, so far as it need here be considered, is more or less shrouded in obscurity. The statute appears to assume that a commission will be paid the agent, but it does not prescribe the amount; nor does it in terms or by necessary implication

[2] The total standard premium for these policies would have amounted to a sum in excess of $1,250,000, whereas the final earned premium for the policies computed in accordance with the terms of the rating plan amounted to $246,127.56. It should be noted that the contract with the Walter Butler Company was on the usual cost-plus basis, which may explain the reason for the government's insistence on the rating plan.

[3] The plan provided for the selection by the contractor of an insurance advisor and for the payment by the contractor, only, for the services of such advisor. It expressly prohibited the insurance carrier from paying anything to such insurance advisor for services rendered.

[4] Only passing attention is given these latter policies in appellees' brief and none at all in the brief of appellant, perhaps because the amount involved is regarded as de minimis.

require that all policies be issued on a commission basis..[5] Without more, the enactment would ordinarily be thought to contemplate only that when a commission is paid the full amount thereof shall be paid the resident agent, the carrier and agent being in other situations impliedly left free to determine by contract the mode of compensation. The trial court found nothing in the local statutes, nor do we, making it unlawful for Ware to agree to accept $5.00 per month for his countersigning services.[6]

Giving the statute the broadest permissible scope it still fails to provide a basis for recovery under the facts of this case. It prescribes no amount of commission which shall be paid the countersigning agent; and since no commission was in fact paid to anyone, and none was payable under the terms of Ware's agency contract, the court is left without guide for arriving at any sum to be awarded. Appellant contends for the application of the "customary" rate, but no local custom was shown which might conceivably supply a basis. The trial court found that in Idaho the compensation payable by carriers to insurance agents for services rendered in securing proposals for insurance is customarily fixed by contract between the carrier and the agent, on terms and conditions mutually satisfactory. Appellant argues, further, that the statute must be read into the agency contract; and since that agreement expressly prescribes a 10% commission on workmen's compensation insurance, the type of coverage mainly written here, the "full Commission" referred to in the statute is thereby definitely established. The trouble with this argument, as already noted, is that the agency contract provides for a commission only on proposals secured by or through the agent. It is notable also that in respect of risks written on a retrospective basis the memorandum agreement of 1940 displaced the contract percentage and left the commission to be fixed on the basis of the individual risk, which was not done. The Supreme Court of Pennsylvania remarked in a cognate case, Birdsall-Friedman Co. v. Globe & Rutgers Ins. Co., 326 Pa. 404, 190 A. 924, 927, that it could not agree "with the contention of plaintiff that the provisions of the act, coupled with a certain trade custom, require the payment of a 10 per cent commission, in the absence of an expressed understanding to that effect. The argument of the plaintiff would be more persuasive if the act specified the rate of commission to be collected. The absence in the act of a specific requirement concerning the rate to be paid permits the parties to fix for themselves the rate of commission and method of payment."

We have not considered whether the statute confers on the agent a right to sue, nor need we determine whether the use of the rating plan unlawfully impinged on the statute. If it did, the circumstance avails appellant nothing. Ware's rights as agent are necessarily derived from the transactions actually consummated by his principals. Apparently the state has not complained. It might in some appropriate proceeding exact penalties or withdraw from the carriers the privilege of doing business in the state, but these are remedies pertaining only to the sovereign.

Affirmed.

---

[5] The only other Idaho statute cited by either party that may throw light on the point is § 40-905 of the Code defining an insurance agent as "any person who for compensation, or otherwise, solicits insurance in behalf of any company receiving applications for insurance." Presumably the compensation may be provided either on a salary or on a commission basis.

[6] Counsel for appellant argues that the memorandum covering the supplemental agreement relative to countersigning expressly comprehended merely "a small amount of countersigning that will be necessary from time to time." It is true that the memorandum does employ that language, but we are not able to say that anything more than a small amount of countersigning was involved here. In any event the suit is not for the recovery of the reasonable value of Ware's services in countersigning, and his right, if any, in this respect is not in issue.