## Goldsmith, Appellant, v. Fillman.

*Deeds—Plan of lots—Boundaries—Courses and distances—Marks on ground.*

The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence, when the marks or monuments are gone.

A map or plan referred to in a deed is a material and essential part of the conveyance, and has the same effect as though copied into the deed itself.

Where a deed for a block of lots describes the lots as numbered according to a certain plan, and there is a further description by an outside boundary of the whole block by courses and distances, and there is an inconsistency between the two descriptions, the courses and distances of the outside boundary will give way to the measurements of the plan of lots.

In ascertaining the location of an interior line in a block of lots, the same rule applies that is applicable in locating an interior tract of land in a block survey, viz.: "The marks of a block consist of the marks, if such are found, of every tract of the block."

Argued Dec. 6, 1906. Appeal, No. 180, Oct. T., 1906, by plaintiff, from judgment of C. P. Montgomery Co., Oct T., 1905, No. 52, on verdict for defendant in case of Godfrey Goldsmith v. Hannah Fillman. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Ejectment for land in the borough of Pottstown. Before SWARTZ, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for defendant. Plaintiff appealed.

*Errors assigned* were, inter alia, as follows:

1. The court erred in not allowing the plaintiff to rest after he had proved possession of thirty feet under his deed, and dispossession by the defendant, thereby throwing the burden of proof upon the plaintiff, as follows:

Mr. Freedley: If the court please we would ask for a non-

suit here on the ground that he has not identified the lot that he says was invaded with the lot that is described in his deed and which is the only lot he has title for.

The Court: I think you will have to go farther, Mr. Young, as I understand it. A man is not bound to put his fence on his line, or put his buildings on his line; he may own beyond the line of the building.

Plaintiff objects to the ruling of the court, and bill sealed.

2. In giving binding instructions for defendant.

*William P. Young*, with him *H. Wilson Stahlnecker*, for appellant.—The plaintiff should have been allowed to rest after proving possession under his deed, and dispossession by the defendant: Kron v. Daugherty, 9 Pa. Superior Ct. 163; Henry v. Huff, 143 Pa. 548; Dawson v. Mills, 32 Pa. 302; Omensetter v. Kemper, 6 Pa. Superior Ct. 309.

All the lines of the Reitmeyer plan of lots were relevant to establish the disputed line: Lodge v. Barnett, 46 Pa. 477; Culver v. Hazlett, 13 Pa. Superior Ct. 323; Dawson v. Mills, 32 Pa. 302; Grier v. Penna. Coal Co., 128 Pa. 79; Gratz v. Hoover, 16 Pa. 232; Parks v. Boynton, 98 Pa. 370; Pruner v. Brisbim, 98 Pa. 202; Knupp v. Barnard, 206 Pa. 280.

Under the law and all the evidence, the verdict and judgment should have been for the plaintiff: Ferguson's App., 117 Pa. 426; Trutt v. Spotts, 87 Pa. 339.

*Henry Fredley*, with him *J. V. Gotwalts*, for appellee.—The location of a block of surveys may be established by a single undoubted monument of the block, and this is the corner of Washington and King streets: Knupp v. Barnard, 206 Pa. 280.

OPINION by HEAD, J., February 25, 1907:

The plaintiff and the defendant are the owners respectively of two lots of ground in the borough of Pottstown. Both of these lots are parts of a plot of ground which, in 1864, was laid out in a plan of town lots by one Reitmeyer. The entire plan showed two tiers of lots separated by a twenty feet wide alley running from east to west. One tier faced north on Chestnut street and extended southward to the alley, but with

it we have no concern. The other tier faced south on King street and the lots stretched northward to the same alley. This entire block or tier of lots, embracing those of the parties to this controversy, was bounded on the west by Washington street, running north and south, at right angles to King and Chestnut streets, and on the east by the property line of Reitmeyer, called in the testimony the Hobart line, which ran northeast and southwest, cutting King street at a considerable angle. The point where this line intersected King street had been marked by a substantial post which was well known and remained for many years, and the entire Hobart line could be for a long period, perhaps can be yet, traced on the ground " by running it through." The testimony does not show with any clearness what was the condition of Washington street in 1864, or in what manner the surveyor, who platted the lots, undertook to locate the exact corner of that street and King street; but it does appear that down until 1886 there had been no official location of the east line of Washington street and no record existed from which such location could be determined with precision. Starting from the point adopted by him in 1864, as the northeast corner of Washington and King streets, and proceeding eastward along the latter street, the surveyor, Willauer, laid out twenty lots, numbered in order from one to twenty, fronting on that street. Nineteen of these lots were rectangular in shape while the last one, No. 20, was triangular, having no actual frontage on the street but only its apex, at the post in the Hobart line already referred to. To lot No. 1, at the starting point, he gave a width, on the street, of thirty-five feet; the next seventeen lots each had a uniform width of thirty feet, whilst No. 19 had thirty-one feet, four inches. Manifestly, therefore, if the ·work was correctly done, the post on the Hobart line, the eastern boundary of the plan, must have been distant from the street line of Washington street exactly 576 feet four inches. None of the lots were fenced or otherwise improved, with the exception of some building on No. 1, but doubtless they were well staked on the ground so that the owner could sell without confusion and give to each purchaser what he bought. In every deed made by Reitmeyer that has been brought to our attention, he always described the lot or lots conveyed by number according

to this plan, and used the adjoining lots east or west, also by numbers, as calls to mark the limits in either direction to which the conveyance could carry.

A careful examination of some of these deeds now becomes important to enable us to fairly understand the theory adopted by the learned trial court and to determine whether the conclusion to which it led was correct or erroneous.

By deed dated March 29, 1865, Reitmeyer conveyed to Israel Fillman five lots numbered 1, 2, 3, 4 and 5, " bounded, limited and described as follows : Beginning at the southeast? (northeast) corner of Washington and King streets, thence northwardly along the south ? (east) side of Washington street 146 feet to a twenty feet wide alley— ; thence eastwardly along said alley 155 feet to a stake, a corner of lot No. 6, in a plan of lots laid out, etc.,—thence southwardly, along the line of said lot, 146 feet to King street aforesaid ; thence westwardly 155 feet to the place of beginning."

By deed dated April 3, 1868, Reitmeyer conveyed to Henry Mehlhouse " seven lots of land Nos. 6, 7, 8, 9, 10, 11 and 12 in a plan of lots surveyed, etc.,—bounded and limited as follows : Beginning at a stake a corner of lot No. 5; thence northwesterly along the line of the same, 146 feet to the south side of a 20 feet wide alley ; thence eastwardly along same 210 feet to a stake corner of lot No. 13 ; thence southwardly along the line of same 146 feet to north side of King street; thence westwardly along the line of the same 210 feet to a corner of lot No. 5, the place of beginning."

Now we think it is apparent, from an examination of these two deeds, that it was not their primary object or purpose to convey to the grantees any exact or particular number of feet front or depth, but rather to convey to each a block of lots cut off, marked and designated by the boundaries named in each. The two blocks adjoined and had a common boundary line, viz. : the western line of lot No. 6.   This line, wherever it was, marked the utmost limit eastward of the grant to Fillman, westward of that to Mehlhouse.   Each was buying lots according to a plan referred to in the deeds, and a " map or plan so referred to becomes a material and essential part of the conveyance, and it is to have the same effect as though copied into the deed : " Ferguson's Appeal, 117 Pa. 426.   Every lot as it

was laid off on the ground, portrayed in the plan, or described or called for in the deed, was, as was said in Lodge v. Barnett, 46 Pa. 477, " a divided portion of land having already a separate defined existence." It would seem clear, therefore, that the grant to Fillman gave him title to the land, cut as it was on the ground and in the plan into five lots, that lay between Washington street on the west and the line of lot No. 6 on the east. If the distance between these two lines was in fact just 155 feet, then that distance was the measure of his grant. But if the distance was in fact more or less than 155 feet, then the measure of his grant, in feet, would increase or diminish accordingly, but the grant itself would remain what it was from the first, viz.: the land between the two boundary lines. " The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by the proof of their former existence when the marks or monuments are gone:" Lodge v. Barnett, 46 Pa. 477. If, then, it becomes important, in the trial of this cause, to ascertain just how much land Israel Fillman acquired under his deed from Reitmeyer, the location of the west line of lot No. 6, as it existed on the ground, would be of the most vital consequence. That the location of this line was thus important we think must follow from the fact that Fillman was the common ancestor in title of both plaintiff and defendant, and that the title which the former holds was older in time and, to that extent at least, prior in right to that held by the latter.

In March, 1869, Fillman for the first time broke lot lines by conveying to Henry Mehlhouse (now Gausman) the eastern one-half of lot No. 5 by the following description, viz.: " Beginning at a stake a corner of lot No. 6 belonging to Henry Mehlhouse thence westwardly along King street fifteen feet to a stake; thence northwardly 146 feet to a twenty feet wide alley; thence eastwardly along said alley fifteen feet to a stake a corner of lot No. 6; thence southwardly along the line of said lot 146 feet to a stake the place of beginning, being one-half of lot No. 5 in a plan of lots," etc. It will be observed that this deed, starting at the eastern boundary of the grantor, carried the grant westward a distance of fifteen feet and with no call or boundary to limit or control the distance named in the deed. The grantee therefore took fifteen feet, neither more

nor less: Green v. Schrack, 16 Pa. Superior Ct. 26. In the same year and month Fillman conveyed to John W. Wentzel, again breaking lot lines, thirty feet immediately west of the strip conveyed to Mehlhouse by the description last quoted. Again there was no call or boundary to control the distance named in the deed and the grantee took his thirty feet. His right to it, now vested in the plaintiff, could in no way be contested by his grantor and at that time no rights of any third party had intervened, the stream that bore the title of the defendant had not yet left the parent fountain. What, then, had Fillman left after these conveyances? It is clear that as the result of them he had moved westward, by forty-five feet, his former eastern boundary and, for the same reasons before given, he now had just what land there was between his new eastern boundary, established by himself, and Washington street. This was not necessarily 110 feet or any particular number of feet. Of course if he had originally 155 feet as his deed stated, and had sold forty-five feet off the east end, he must needs have had 110 feet left. With whatever he had left he made an entirely new plan, abandoning the old lot lines, and converted the property into three lots fronting on Washington street. The northermost of these three he conveyed in November, 1869, to Ephraim Fillman, the immediate predecessor in title of the defendant. By this deed the grantor undertook to convey a lot thirty-five feet wide on Washington street and extending back, of equal width, a distance of 110 feet. Assuming, therefore, that the line of Washington street continued where the surveyor located it in 1864, and that all of his work on ground and plan was correctly done, the rear and eastern line of defendant's lot ought to be exactly coterminous with the western line of the plaintiff and no contention could arise. It appears, however, that after these lots had been occupied by the owners for many years without dispute, the defendant learned that her lot had, in fact, a depth of but $108\frac{1}{2}$ feet. She thereupon rebuilt her rear fence eighteen inches farther east, encroaching to that extent on what the plaintiff claimed to be his property and this action followed. During the trial much evidence was offered by the plaintiff to show the lines of many, if not all, of the lots east of No. 6, and that all of them conformed to the lines as originally marked by the surveyor and shown on his

plan. This evidence we regard as relevant and important, not to establish as independent facts the lines of lots about which there was no dispute, but as tending to show the correctness of the surveyor's work, and as valuable aids to the jury in locating the line of lot No. 6, the significance of which we have already adverted to. We see no reason why in ascertaining the location of this interior line in a block of lots we should not apply the same rule that has been held to be applicable in locating an interior tract of land in a block survey. "The marks of a block consist of the marks, if such are found, of every tract of the block:" Knupp v. Barnard, 206 Pa. 280.

At the conclusion of the trial the learned court below struck out all of this evidence and held as a matter of law that the defendant, as the result of the several conveyances we have heretofore noted, was entitled to have the full depth of 110 feet called for in her deed and therefore the plaintiff could not recover. This erroneous conclusion seems to have resulted partly from the assumption, as an undisputed fact in the case, that the present building line of Washington street, officially adopted in 1886, is identical with the line adopted by the surveyor in 1864. A jury may find it to be so if the weight of the evidence so inclines, but in the present state of the record we do not think the court was warranted in assuming it to be either an admitted or established fact in the case. Further, the court held that when Reitmeyer conveyed to Fillman, as the former owned more than 155 feet east of Washington street, his deed must have carried the grant that far. This construction of that conveyance, in our judgment, entirely overlooks the terms in which the instrument itself declares that the grant was "bounded and limited" on the east by the line of lot No. 6, and ignores the force and effect of the rule that the courses and distances in a deed must give way to the calls for adjoiners. Again we say a jury may so find, but it must be after hearing all relevant evidence that may be offered and receiving instructions from the court that will harmonize with the principles herein laid down. The second and third assignments are sustained.

The remarks of the learned court which are made the basis of the first assignment were nothing but a frank statement of his views at the stage the trial had then reached. They re-

sulted in no definite ruling or order. It was still the privilege of counsel to determine for himself when he had made out a prima facie title in the plaintiff and when he should rest his case. We see nothing in the assignment that would warrant us in sustaining it and it is therefore dismissed.

Judgment reversed and a venire facias de novo awarded.