Harper et ux., Appellants, v. Coleman.

Argued April 17, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

64

*James A. Graham,* of *Graham & Yost,* and with him
*I. Morton Meyers,* for appellants.—The measurements
made upon the ground by the grantor established the
boundaries of the lot intended to be conveyed: Carroll
v. Miner et al., 1 Pa. Superior Ct. 439; Trustees, etc.
v. Lehigh Valley Coal Company, 241 Pa. 469; Willis
v. Swartz, 28 Pa. 413.

*Howard W. Stull,* and with him *Tillman K. Saylor*
and *Friedjoff D. Tappert,* for appellee.—Parol evi-
dence is inadmissible to vary the boundaries described
in a deed, where fraud, accident or mistake are not
alleged: Hoffman v. Buchanan, 83 Pa. Superior Ct.
454; Harvey v. Vandergrift, 89 Pa. 346; McKinley v.
Ulery, 47 Pa. Superior Ct. 353; Goldsmith v. Fillman,
33 Pa. Superior Ct. 44; Deppen v. Bogar, 7 Pa. Su-
perior Ct. 434; Schenley v. City of Pittsburgh, 104
Pa. 472. Plaintiffs were bound by the recitals in the
deed: Cox v. Freedley, 33 Pa. 124; Robinson v. Myers,
67 Pa. 9-1$\bar{8}$; Trutt v. Spotts, 87 Pa. 339; Trausue v.
Sell, 105 Pa. 604.

OPINION BY GAWTHROP, J., July 12, 1928:
This is an action of ejectment. Plaintiffs and de-
fendants are the owners, respectively, of two lots of
ground in the 8th Ward of the City of Johnstown.
The testimony shows that both lots are parts of a plot

of ground which was laid out by Lincoln Messenger in a plan of lots known as Plainfield, which was duly recorded in 1908. The plan shows a tier of lots, among which were No's. 108, 109 and 110, facing northeast on Tillman Avenue and extending back to an alley. In September, 1912, one Figge, desiring to purchase a lot, went with Messenger and looked at lots Nos. 108 and 109 and a blue print of the plan of Plainfield showing the dimensions of the lots. Messenger undertook to point out the four corners of lot No. 109. In attempting to find the southwest corner of this lot, he measured from a stake at the southeast corner thereof a distance of 99.6 feet northwestwardly along the alley to a point where he "said the stake ought to be," but found no stake, although he dug a hole eighteen inches in diameter and six inches in depth, and no stake or monument was put in by them at the time. The length of the rear line of this lot along the alley, as shown on the recorded plan and the blue print thereof which Messenger and Figge had before them, is 89.66 feet, or about ten feet less than the distance measured by Messenger in attempting to locate the southwest corner of the lot. They found a stake at the northwest corner of the lot on Tillman Avenue. Figge did not buy the lot at that time, but about a month later went to Messenger's office and told him that he would buy lot No. 109, paid him $10 on account and started to build a house on the lot before he got a deed. He employed an attorney to examine the title and in a few weeks received a deed for the lot described as follows: "Beginning at a post, corner of lot No. 110 and Tillman Avenue; thence along said line of lot No. 110 ...... a distance of 99.28 feet to a post on an alley; thence along said alley ......, a distance of 99.60 feet to a post, corner of lot No. 108; thence along line of lot No. 108 ...... a distance of 80.40 feet to a post on Tillman Avenue; thence along Tillman Avenue ......, 49.65 feet to a post and the place of beginning,

having lot No. 108 on the one side and lot No. 110 on the other. It being marked and known as lot No. 109 on plan of lots as laid out by the Fetterman Engineering Company for Lincoln Messenger.'' At that time Messenger owned lot No. 108. It will be noted that all of the courses and distances in the deed correspond with those shown on the plan, except the rear line on the alley, and that the description will not close. A few months after Figge got his deed, he drove a stake at the point where Messenger dug the hole in looking for the stake at the southwest corner of lot No. 109, and graded his lot to a line connecting that point with the northwest corner of the lot. Plaintiffs are the successors in title to Figge, their deed following the description in the deed from Messenger to Figge. Defendants are the owners of lot No. 108. The description in their deed follows the lines of lot No. 108, as shown on the recorded plan. This action involves the title to the triangular piece of ground, approximately ten feet in width on the alley and tapering northeastwardly to a point on Tillman Avenue, as to which the descriptions in the deeds to plaintiffs and defendants overlap. The trial judge entered a compulsory nonsuit and plaintiffs have appealed from the order overruling their motion to strike it off.

On the trial of the case, it was contended on behalf of plaintiffs, and it is contended before us, that the testimony that Messenger took Figge upon the ground before the bargain was made and undertook to point out to him the corners of lot No. 109 and caused the hole to be dug at the point which he thought the stake marking the southwest corner of the lot should be, together with the undisputed fact that some months later Messenger made his deed describing the course along the alley as running ''a distance of 99.60 feet to a post,'' establishes not only an intention to convey, but an actual conveyance of the land in dispute. We are of opinion that the court below rightly refused to

give effect to this argument. While it is undoubtedly
true that Messenger, as the owner of ground divided
into lots according to a recorded plan, might go upon
the ground and measure off, and by deed of convey-
ance sell any part thereof in disregard of the lines of
the plan, no intent to do so is evinced either by the
deed from Messenger to Figge, or by the parol testi-
mony offered to explain the deed. It seems quite clear
that there was a mere mistake in describing the length
of the course of the lot along the alley, and that neither
Messenger nor Figge had in contemplation the con-
veyance of any other land than that contained within
the boundary lines of lot No. 109 on the Plainfield
plan. Figge did not testify that Messenger said that
the southwest corner of the lot was at the point where
the hole was dug. The effect of his testimony is that
Messenger tried to find that corner of the lot and failed
to do so; that he placed no monument there to mark
the corner; and that he did not indicate that he in-
tended the hole to be regarded as such. And when
Messenger made his deed, erroneously describing the
length of the course along the alley, he described it
as running to the corner of lot No. 108, which could
be ascertained readily by a survey with reference to
the plan of Plainfield. The description called for lot
No. 109 on said plan of lots, "having lot No. 108 on
the one side and lot No. 110 on the other." Where
maps, plats or field notes are referred to in descrip-
tions of land, they are to be regarded as incorporated
into the description and they stand on the same foot-
ing as monuments: 9 C. J. 220. A map or plan so
referred to becomes a material and essential part of
the conveyance and it is to have the same effect as
though copied into the deed: Goldsmith v. Fillman,
33 Pa. Superior Ct. 44; Ferguson's Appeal, 117 Pa.
426; Trutt v. Spotts, 87 Pa. 339; Robinson v. Myers,
67 Pa. 9. The courses and distances in a deed always
give way to the boundaries found upon the ground or

supplied by the proof of their former existence when the marks or monuments are given: Lodge v. Barnett, 46 Pa. 477. Plaintiffs bought a lot according to a plan referred to in their deed. If the southern course thereof was in fact 99.60 feet, then that was the measure of their grant; but if the distance was in fact more or less than 99.60 feet, then the measure of their grant, in feet, would increase or diminish accordingly, but the grant itself would remain what it was from the first, viz: the land between the boundary lines of the adjoining lots. Lots Nos. 108 and 109 had a common boundary line. This line marked the utmost northwestern limit of the grant to Figge and his successors in title. Our Supreme Court said in Cunningham v. Neeld, 198 Pa. 41, "It is said in Caldwell v. Fulton, 31 Pa. 489, 'It is, however, the settled rule that a deed must be construed' *ex visceribus suis.*' " When the intent is clearly expressed, no evidence of extraneous facts or circumstances can be received to alter it." It has been held that, where the description in a deed closes with a clause which clearly and unequivocally sums up the intention of the parties as to the particular property conveyed, such clause should be given its proper effect upon all the antecedent phrases in the description: 18 C. J. 278. We agree with the trial judge that an examination of the deeds offered in evidence by plaintiffs and the plan of Plainfield, which is a part thereof, discloses no ambiguity requiring the aid of parol testimony to explain them. The general rule upon the subject is correctly stated as follows in 18 C. J. 277: "The intent of the parties, as manifested by the language of the deed, will, as a general rule, control in determining the property conveyed, and in case of ambiguity or uncertainty of language of a description will be liberally construed in order to effectuate, if possible, such intention; but the intention of the parties must be gathered from the language of the deed, and where such language is plain and intelligible, it

cannot be changed or varied by construction, although it is plain that it is not the description which was intended to be used ...... An exception to this rule exists, as between the parties at least, where they have made a physical survey of the land and have marked the boundaries, and their deed is intended to convey the land so marked, although it contains a different and erroneous description. However, the exception is to be applied with caution; all the requirements necessary to bring the case within the exception must be met before it will be held applicable." In view of the lack of evidence of a going upon the ground and definitely marking out a piece thereof which it was the intention of the grantor to convey and the grantee to purchase, the unambiguous terms of the deed are controlling. In the absence of evidence to the contrary, it must be assumed that the deed was accepted as a full and complete execution of the parol contract of sale. The extent of plaintiffs' title must, therefore, be determined by the description in the deeds and the plan therein referred to and virtually made part thereof: Schenley v. City of Pittsburgh, 104 Pa. 472. The following language from the opinion in that case is applicable here: "The parties could not have had in view to derange, dislocate, or break in on the plan. They profess to contract in conformity to it and in conformity to the numbers; they adopt that plan and regulate their conveyance by it." We have examined all of the cases relied upon by counsel for appellants and find nothing therein decided which we deem in conflict with the views above expressed. Each case is readily distinguishable from the present case on its facts. The very satisfactory opinion of the court below fully justifies its conclusion.

The judgment is affirmed.