## Goldsmith, Appellant, *v.* Means.

Argued October 2, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Aaron S. Swartz, Jr.,* of *High, Dettra & Swartz*

and with him *Cuthbert H. Latta, Jr.,* and *John S. Sinclair,* of *Williams, Brittain & Sinclair,* for appellant.

*Stanley B. Rice* and with him *Maurice W. Sloan* of *Sloan, White & Sloan* and *Franklin L. Wright* for appellee.

OPINION BY LINN, J., January 28, 1932.

This ejectment was tried by a judge without a jury. The plaintiff appeals. The parties are adjoining lot owners. The lots, with the triangle claimed by each, and the precise point for decision, and the reason for our conclusion, can perhaps most readily be understood by reference to a rough copy of the plan of lots referred to in the deed to defendant and inserted in this opinion, and by quotations from the following descriptions from duly recorded deeds in evidence.

We begin with a time when title to plaintiff's and defendant's lots was in the Pennsylvania Company etc. et al., trustees. In 1920 they conveyed to Delmont, describing the land as follows: "(1) Beginning at a point of intersection of the middle line of Mill Road and the title middle line of Montgomery Avenue; thence along the middle line of Mill Road north 16 degrees 36 minutes west, 162.55 feet [this line will be referred to in this opinion as line AB], thence by other land of the grantors north 72 degrees 7 minutes east 220 feet [referred to in this opinion as line BC] to a corner of the lot hereinafter described, thence by the same south 17 degrees 53 minutes east 100 feet [line CD], thence by other land of the Magee estate south 8 degree 46 minutes west 168.45 [line DE], to the title middle line of Montgomery Avenue aforesaid, thence along the same north 77 degrees 9 minutes west 172.28 feet [line EA] to the place of beginning, containing one acre, more or less." The deed conveyed other land to which we need not now refer, and contained restric-

tions, among others, that a dwelling house "must cost not less than $5,000" and that "each house [must] have a lot of at least one-half an acre." Dwelling houses were erected before plaintiff bought.

In 1922 Delmont conveyed the tract so described to Weil et al., subject to the same restrictions. Both plaintiff and defendant claim by deeds from Weil et al. Before quoting from those deeds, we here note our ultimate conclusion that in the deed to the defendant, an obvious scrivener's error was made in stating the length of the second or northern line of the lot intended to be described—part of line BC in the description quoted above—an error that has resulted in this suit. Before conveying any lots, the owner of both plaintiff's and defendant's lots and also other adjoin-

ing land in 1920, had an engineer prepare a plan dividing the land in lots. While the plan was not recorded, and is not physically attached to either plaintiff's or defendant's deeds, it is referred to in defendant's deed for purposes of identifying and describing the land conveyed.

In 1923 Weil et al., conveyed to the plaintiff the lot, of which defendant claims part in this suit; in now quoting the description from that deed, we adhere to the same lettering for lines in this deed which coincide with lines in the former deed from the common owner. It is as follows: "Beginning at a stake in the line in or near the middle of Montgomery Avenue seventy-two feet—[herein called point F in line AE] southeast from the intersecting line of Montgomery Avenue and the middle of McClenahan Mill Road, thence extending north 17 degrees, 57 minutes east 125.3 to a stake [line FG] passing over a stake in the northeast side of Montgomery Avenue, 41 feet, 6 inches from the point of beginning, thence extending north 17 degrees, 53 minutes west 97.5 feet to a stake [in line BC and herein called point H] in the line of the Magee estate, thence by the latter north 72 degrees 7 minutes east 88 feet 6 inches to a stake; [being line HC, and the eastermost 88 feet 6 inches of line BC] thence by other land of Lida Patten Delmont south 17 degrees 53 minutes east 100 feet to a stake; [line CD] thence by other land of the Magee estate south —8 degrees 53 minutes [stated as 46 minutes on the plan] west 168.45 to a stake [line DE] in the property line of Montgomery Avenue 42 feet 6 inches from the northeast side of said Montgomery Avenue; thence within Montgomery Avenue north 77 degrees 9 minutes west 100.28 feet to the first mentioned point [point F in line AE] and place of beginning, containing one-half acre, more or less."

The defendant had taken title to her lot in 1922 from the same grantors who conveyed to the plaintiff in

1923. In the deed to the defendant, her lot is described as follows: "All that certain lot or piece of ground with the messuage or tenement thereon erected, described according to a plan thereof made by Milton R. Yerkes, C. E., on the twelfth day of October, A. D. 1920, as follows, to wit: Beginning at a spike at the intersection of the middle line of Mill Road and the title middle line of Montgomery Avenue ...... thence extending along the middle line of Mill Road north 16 degrees 36 minutes, west 162.55 feet to a point [line AB above]; thence by land of the Magee estates, north, 72 degrees, 7 minutes, east 162.55 feet to a point [point I part of line BC] thence by other lands of Lida Patten Delmont, south 17 degrees, 53 minutes, east 97.5 feet [referred to as line IJ] and thence south 17 degrees, 57 minutes west 125.3 feet to the title middle line of Montgomery Avenue; [referred to as line JK] and thence extending along the latter north 77 degrees, 9 minutes, west 72 feet to the first mentioned point and place of beginning; [being the western section of line AE] containing one-half of an acre, being known as the northeast corner of Montgomery Pike and Mill Road, Wynnewood, Pennsylvania. ......"

Now if that description is read as written, without looking at the surveyor's plan referred to in the deed, it will include much more than half an acre, will take part of plaintiff's house, but will not close because point K in line AE will be much more than 72 feet from point A; anything so absurd can therefore not have been intended. But if the description is read with the surveyor's plan, and one looks for the lot on the plan "known as the northeast corner of Montgomery Pike and Mill Road" as the deed describes it, it agrees in every respect with the plan save that the northern boundary line, AI, is stated to be 162.55 feet long in the description, and is only 131.5 feet long on the plan.

We may perhaps note, in passing, that a moment's consideration of the plan and description will show that a scrivener erroneously repeated for the second line the distance he had just written for the first line; the error seems to have been made first in a mortgage in evidence made by Delmont in 1920, and thereafter persisted in by equally careless scriveners. Defendant's grantors intended to convey according to the plan; they intended to convey half an acre, and they were bound by the restriction that each lot should have one house to the half acre; the house was there; they did not intend that defendant should get part of the house afterward conveyed to plaintiff, and leave that lot with an area of much less than half an acre with part of a house on it: (indeed, defendant testified that was not the intention though we attach no importance to his testimony in reaching our decision).

When defendant learned of the error in the description in her deed, she complained to the title company that had insured her title. An employee of this company testified that defendant's husband then informed him that the line BH "was to be 165 feet [though the deed states it as 162.55] and that was what he had purchased, and I made a plot of the deed and made a plot of the property that had been sold off [apparently the lot and house sold to plaintiff] and in the meantime I had made a plot of Mr. Goldsmith's deed [plaintiff] and submitted it to Mr. Cree [grantors' agent] and he agreed that the triangle in the rear was to have been included in the Mean's deed [defendant] and that the other lines were to have gone on down so far as shown on the survey." The triangle referred to is the land in suit, and was made by arbitrarily drawing a line from point I to point Y, the triangle then having as its base the northern line HJ 31.05 feet, (difference between 162.55 feet and 131.5 feet) and on the line HY 97.5 feet, and the third side a line ar-

bitrarily drawn to connect the other two points. This witness also said "I told him......we really got paper title and possession of a large portion of Mr. Goldsmith's property, and, of course, it was an error and that Mr. Means did not claim that, but that he claimed the triangle in the rear and I thought the thing to do was to put on record a deed of confirmation, and to straighten that line and establish the title of the two properties." The agent agreed. A deed was prepared and was sent by the witness, acting for the title company, to the agent of the grantors for execution; it was executed, returned to him and recorded. Nothing was said on the subject to the plaintiff, though she had a vital interest in the matter. From all that appears in the evidence, this was a reprehensible transaction on the part of the title company meriting the condemnation of the court; Mr. Means testified that he knew nothing about the execution of the deed of confirmation before it was done "only that the [title company] told him that they were going to have the matter taken care of."

It is well settled that when a map or plan is referred to in a deed as showing or identifying the land described in the deed, the map or plan becomes a material and essential part of the deed and must be treated as if copied into the deed: Harper v. Coleman, 94 Pa. Superior Ct. 62 and cases there cited; "we are therefore bound to read the deed with the plan in it:" Birmingham v. Anderson, 48 Pa. 253, 260. It is equally well settled that when the intention of the parties can be clearly ascertained from the deed and the plan, parol evidence cannot be received to alter it. The learned court below was however of opinion that parol evidence should be received; plaintiff objected and excepted. Mr. Means, husband of the defendant testified on her behalf that before defendant purchased he examined the ground and that it was unfenced; that he

was shown the plan. He said: "It was my understanding that the property in that location was restricted to half-acres......" He states, it is true, that he bought "with the understanding that they would extend to me, or give me more land that was designated by two different stakes on the back line which runs along the Gilpin's land which is shown as 162.55." But that understanding amounts to nothing in the face of the record, which bound him; there he could read the restrictions; he had the surveyor's plan; he could read in his deed, before accepting it, that he was buying and receiving the house and lot "known as the northeast corner" of the intersecting streets shown on the plan which completely marked off and defined every course and boundary; the lot was as fully identified as if it had been given a number, or letter or other device; it was intended to be conveyed according to the plan, on which the northern line BH was 131.5 feet to a stake and not 162.55 feet. Bound by the rule of law that the plan so identifying the lot prevails over an error in a course or length of a line, the defendant must submit to the correction of the error by adhering to the plan. Moreover, if for purposes of argument, we assume that the line, 162.55 feet long, had been intended, which is the extent of the evidence given by Mr. Means, the next course and distance in the deed IJ would very materially reduce the adjoining half acre tract, and would pass through the house on the tract, all of which Mr. Means and the grantors' agent testified was not intended. We refer to this only to show that what the application of the rule of law above stated requires, is, in fact, supported by the evidence of these witnesses, irrelevant though it is, for the reason already stated. Examination of the deeds from the Pennsylvania Company et al., trustees, down to the parties to this suit, in connection with the plan, shows clearly **an obvious scrivener's error in stating the northern boundary of defendant's lot as 162.55 feet**

instead of 131.5 feet. That conclusion it is the duty of the court to reach on the documents; it was therefore wrong to receive the parol evidence of contrary intention. This is not a case where the plan shows one tract and the description in the deed another, as in Lawver v. Anderson, 77 Pa. Superior Ct. 208, and 275 Pa. 211; it is governed by the rule applied in Harper v. Coleman, supra, where the dimensions of the lot shown on the plan prevailed over an obviously erroneous distance stated in the deed.

The judgment is reversed and the record is remitted with instructions to enter judgment for the plaintiff.