## Podlesny et ux. v. Baranko et ux.

*George I. Puhak* and *Andrew I. Puhak*, for plaintiffs.

*Edward J. Bonin*, for defendants.

FLANNERY, J., January 15, 1952.—This is a bill and answer to determine the dividing line of a double property willed to Julia Podlesny, wife plaintiff, and John Baranko, husband defendant, by their father, Michael Baranko, Sr., deceased.

### Findings of Fact

1. Michael Baranko, Sr., late of the Borough of West Hazleton, during his lifetime owned a lot or piece of ground there, situate on the southwest corner of Winters Avenue and First Street, being 37½

feet in front on Winters Avenue and running along First Street to a depth of 133 feet.

2. The lot or piece of ground aforesaid was improved with a double house, the respective halves of which were identified as Nos. 302 and 300 Winters Avenue.

3. Michael Baranko, Sr., died testate on May 20, 1939, seized of the aforesaid property and by his will recorded in Will Book 67, page 303, in the Office of the Register of Wills of this county, provided, inter alia, as follows:

"I bequeath to my daughter, Julia Podlesny, the West side of the double house, Number 302 Winters Avenue, West Hazleton, on the South side of the Street. . . .

"I bequeath to my son, John Baranko, the east side of the double house, Number 300 Winters Avenue, West Hazleton, on the East side of the house."

4. The center line of the double house does not coincide with the center line of the lot.

5. By using the center line of the double house, continued north and south, as the dividing line between the two portions of the lot, the house known as No. 302 Winters Avenue (the westerly portion of the lot) occupies a frontage of 20.15 feet and a depth of 133 feet while the house known as No. 300 Winters Avenue (the easterly portion of the lot) occupies a frontage of 17.35 feet and a depth of 133 feet.

6. In the rear of the lot there is a structure variously known as a barn, or a garage, which faces on First Street, defendants' portion, and extends back approximately 20 feet into the lot encroaching approximately 2½ feet on plaintiffs' portion.

7. The structure was built as a barn by the deceased father many years before his death and used by him in his use and occupancy of the premises generally.

8. The entire structure is and has been traditionally associated with the use of the premises known as No. 300 Winters Avenue and its continued use, intact, is necessary for the full enjoyment of the devise of the premises so designated.

9. Plaintiffs requested defendants to remove the encroachment, which they refuse to do, claiming the garage occupied.

## Discussion

Defendants contend that their title and ownership to the disputed portion of land occupied by the rear of the barn is a conclusion of law to be derived from all the facts and circumstances. They reason that the intention of decedent should control and since he knew how the land was occupied, i.e., the barn is almost entirely on defendants' portion where it has stood for many years, it was his intention that defendant should have not only the whole barn but also all the land which it occupies. According to them the division between the two lots should be a line parallel with First Street running south from Winters Avenue, back through the center line of the house, continuing until it reaches the barn then breaking off at a right angle in a westerly direction to clear the barn, thence south parallel with First Street again to the southern boundary of the lot.

It is plaintiffs' contention that the dividing line of the house projected in either direction latitudinally to the extremities of the land is the dividing line of the two lots.

The facts are not in dispute and accordingly the title to and ownership of the land occupied by the rear of the garage, being about 2½ feet deep and 36 feet long, is a question of law for the court.

It is fundamental that in a conflict as to boundaries monuments will prevail over measurements: Lodge v.

Barnett, 46 Pa. 477. Nothing is better settled in the law of this State and our reports have case after case illustrating its application to the varying facts of each.

That principle must apply here with even greater force since the devise contains no dimensions but reference only to monuments, i.e., the house.

When decedent devised one half of the double house to his son, one half of the double house to his daughter, each designed to be occupied as a separate dwelling, and with a dividing wall between them, he must be held to have intended the dividing wall for a party wall "and the center line thereof extended longitudinally from street to street, to be the dividing line between the two properties": Medara v. Du Bois, 187 Pa. 431; Ross v. Golden et ux., 344 Pa. 487. And that brings us to the crux of our problem for the line so determined cuts through the rear end of the barn or garage which crosses the back of defendants' lot and encroaches approximately two and a half feet into that of plaintiffs.

Plaintiffs contend that the occupation is a trespass on their portion and pray the court in this action to compel its removal. Defendants contend that it was the intention of testator that they should have the entire garage and so are entitled to the land it occupies.

Obviously this use of plaintiffs' land for the rear wall of the garage is not as is suggested by defendants, an easement, in the true sense of that word. What is contemplated here is the exclusive occupancy which is in the nature of a fee and cannot be construed as an easement: Clements v. Sannuti et ux., 356 Pa. 63.

We agree with defendants that the intention of testator controls the extent of the grant but it is not too clear what the intention of testator was. Where a portion of a building has not been embraced within the description of the land conveyed by the common

owner of all the land covered by the building, and where it does not clearly appear from the grant that the parties intended the entire building to pass, the cases hold generally that such grantee has no right of ownership in, or right of possession to, the portion of the building on the adjoining land.

In the case of Griffiths v. Morrison, et al., 106 N. Y. 165, 12 N. E. 580, where the grantor of a lot failed to include in the description five feet of a house which stood on the contiguous lot he also owned, the court said:

"I think the estate granted was a lot of land . . . and such building as was on that lot, but the estate did not extend to any portion of that building which was outside of and beyond such lot. . . ."

In Adams v. Marshall, 138 Mass. 228, the court held that a grantee of land, the boundary line of which ran through a barn, acquired title only to the part of the barn on the land conveyed and had no easement entitling him to the adjoining land:

"There is no mention of the barn in the deed to the defendant; the premises are conveyed by metes and bounds. Whatever title the defendant has in the barn has been acquired because the barn was so attached to the realty as to have become a part of it, and therefore that part of the barn which was within the boundaries of the land conveyed to him passed to him by the deed as a part of the premises conveyed . . . there are no words in the deed whereby the grant can be extended beyond the boundaries of the land."

And the rule thus stated has been held to apply to Pennsylvania. In Strausburg v. Sidwal Realty Company, 19 Northamp. 268, the court held that there was no implied easement to have the cornice, bay window and fire escape of a building extend over an adjoining lot. The owner of the adjoining lot—who had been the common owner of both lots—was permitted to re-

move the encroachments as property held to belong to him.

On the other hand, where it is manifest from the instrument of conveyance that the parties intended that the entire building should pass, although a portion of the building was not included within the description of the land conveyed, it is held that the conveyance by implication included the land covered by the entire building. The rule applied in such cases is thus stated in 26 C. J. S. 388, 389, §106(b) (2) :

"A conveyance of a building may pass the land on which it stands and also land contiguous or incident thereto necessary to the ordinary use and enjoyment of such building."

In Dikeman v. Taylor, 24 Conn. 219, the premises conveyed were set forth as a certain lot described by metes and bounds "with a store standing" thereon. A portion of the store was, however, on the adjoining lot. It was held that the occupied portion of the adjoining lot passed by the description in the deed. The court held:

"It (the deed) . . . intended to convey . . . the store, and the land on which it stands. . . . The store being a permanent building, not intended to be removed, the conveyance of it passed the land on which it stood."

Also in Harvey v. Inhabitants of Sandwich, 256 Mass. 379, 152 N. E. 625, it was said:

"It is a general rule of construction that 'whenever land is occupied and improved by buildings or other structures designed for a particular purpose, which comprehends its practical beneficial use and enjoyment, it is aptly designated and conveyed by a term which describes the purpose to which it is thus appropriated' . . . and the conveyance in such a form passes by implication and comprehends the land under the structure and the land adjacent thereto so far as

necessary to its use and commonly used with it not as an appurtenance but as parcel."

And in Pennsylvania we find in Boyer v. Condon, 46 Pa. C. C. 214, a grant of a house or a building annexed to land was held to include the land under it and not the mere easement therein. Also in McGrath v. Liddell, 73 Pitts. L. J. 393, a conveyance of land by metes and bounds, "having a garage thereon" was held to include the parcel of adjoining land, on which a small portion of the garage encroached, also owned by the grantor.

In these cases it was not an easement appurtenant to the land conveyed which passed but the land itself on which the building stood; even part of the adjoining lot was conveyed by the construction given the deed. If, however, the deed merely describes the lands conveyed by metes and bounds without designating the particular building through which the boundary line runs, the intent to convey the whole building could not be implied.

In other authorities where in each case a very small portion of the building was on other land and where the equities clearly warranted granting relief, the maintenance of the encroachment was permitted on the ground that an *implied easement* existed to that extent: Carrigg et al. v. Bank, 136 Iowa 261, 111 N. W. 329; Slachter v. Olderman, 116 Conn. 156, 164 Atl. 202; Bihss et al. v. Sabolis et al., 322 Ill. 350, 153 N. E. 684.

In this State it has long been recognized and recently affirmed by our Supreme Court, that actual and exclusive possession of land could not be held by easement, such use being tantamount to a fee: Clements v. Sannuti, supra. But it is to be noted that the court there added this observation which would appear to qualify its conclusion:

". . . were this a case of a slight encroachment of a building upon or near the dividing line, as in numerous cases cited to us by appellee, somewhat different considerations would be involved."

We have reviewed the law as a background for the instant question and in the light of the authorities we are satisfied that the intent of testator is to be derived from all the surrounding circumstances, including the use to which the premises have been dedicated and all the incidents necessary to the full and traditional enjoyment of each portion of the property devised.

We are satisfied that decedent father sought to divide his property fairly between his two children and in giving the corner lot to wife defendant it must be presumed that he was aware of the existence and location of the garage. It follows therefore that he gave her the garage also. Plaintiffs contend that he intended to devise only a part of the garage, specifically about seven eighths. But this would be illogical, and unreasonable, and to accept it would run counter to the principle that a man may not derogate from his own grant: Grace Methodist Episcopal Church v. Dobbins, 153 Pa. 294. And it would be inequitable in view of all the facts, i.e., the area is not so built up that land is at a premium; this encroachment of approximately 2½ feet in the rear of his lot is of comparatively little value to plaintiff and its continued use is of great value to defendants.

It is true that in this case the devise was described neither by metes and bounds nor by identifying the barn or garage as such, so that neither of the usual standards can be applied. But it was a family settlement in which the donor sought to divide his property equitably and to implement that devise so that each heir will have full enjoyment not only of his half of the house but all the incidents traditionally and necessarily associated with its use, we must hold that the

entire barn or garage together with the land it occupies is included with 300 Winters Avenue.

## Conclusions of Law

The wife plaintiff received under the will of her father and holds in fee thereby a piece or parcel of land bounded and described as follows, to wit:

"BEGINNING at a point in the southerly side of Winters Avenue 17.35 feet West of the southwesterly corner of Winters Avenue and First Street; thence South in a line parallel with First Street through the center partition of a double frame dwelling to a barn or garage; thence West 2.68 feet to a point; thence South in a line parallel with First Street 36 feet to a point; thence East 2.68 feet to a point; thence South in a line parallel with First Street to an alley; thence West along said alley 20.15 feet to the easterly line of lot No. 2; thence North along the easterly line of lot No. 2  133 feet to the southerly side of Winters Avenue and thence East along the southerly side of Winters Avenue 20.15 feet to the place of beginning. Being known as No. 302 Winters Avenue."

The husband defendant received under the will of his father and holds in fee thereby a piece or parcel of land bounded and described as follows, to wit:

"BEGINNING at a point, being the southwesterly corner of Winters Avenue and First Street; thence West along the southerly side of Winters Avenue for a distance of 17.35 feet to a point; thence South in a line parallel with First Street through the center partition of a double frame dwelling to a barn or garage; thence West 2.68 feet to a point; thence South in a line parallel with First Street 36 feet to a point; thence East 2.68 feet to a point; thence South in a line parallel with First Street to an alley; thence East along said alley for a distance of 17.35 feet to the westerly side of First Street; thence North along the westerly side

of First Street a distance of 133 feet to the place of beginning. Being known as No. 300 Winters Avenue."

### Decree Nisi

Now, January 15, 1952, at 11 a.m., it is ordered, adjudged and decreed as follows:

1. That plaintiffs' bill be and the same is hereby dismissed.

2. That the costs shall be paid by plaintiffs.