Ryan *v.* Hudak, Appellant.

Argued April 24, 1962.    Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*John E. Landis,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE EAGEN, November 13, 1962:
The plaintiffs, Thomas B. Ryan and Elizabeth H. Ryan, his wife, filed a bill in equity seeking to enjoin the defendant, Rhinehart S. Hudak, from closing and obstructing a lane or roadway leading from Valley Forge Road to their property in Worcester Township, Montgomery County, Pennsylvania. After answer filed,

a hearing ensued and the chancellor entered a decree nisi granting the prayer of the complaint. Defendant's exceptions to this ruling were subsequently dismissed by the court en banc and the injunction made permanent. The defendant appeals.

The material facts, none of which are in serious dispute, are as follows:

The plaintiffs and the defendant are owners in fee of adjoining tracts of land. The plaintiffs acquired title by deed, dated December 16, 1958. The defendant acquired title, by deed, dated August 19, 1946. Both tracts had a common owner (John Boileau) in 1828, and for some years following. The present dispute hinges upon the interpretation of an expressed reservation contained in a deed in the defendant's chain of title, which reads as follows: "Excepting and reserving to the heirs of John Boileau forever the free and uninterrupted use and privilege to cleanse and repair the race or water course to the mills of the late John Boileau through the hereby granted premises as also of the road leading to said mills through the same and the privilege to the heirs and assigns of the said John Boileau forever on either side of said mill race to enter and drive wagons, carts and other carriages, to mend and repair said race or mill road, also the privilege of using the surplus water to water his meadow at all seasons and times when it can be spared from the mills of the said now or late Boileau."

The "road" referred to in the above reservation begins on plaintiffs' land on Valley Forge Road, a public highway, and extends for approximately one-fifth of a mile (*in part over defendant's land*) to the plaintiffs' house and to another residence to the rear thereof, as well as to the mill site mentioned. The road is improved with stone and gravel, follows a winding tree-lined course, and is only sufficiently wide

to permit the passage of one automobile at a time. Since the year 1920, it has been maintained by the township. Since the year 1900, the road has been openly and continuously used by the plaintiffs, their predecessors in title, their guests and trades people.

The only access to the plaintiffs' property from a public highway, other than by way of the road mentioned, is a township road called Shut Mill Road, which leads from Skippack Pike. This road has not been maintained by the township since 1920, has virtually been in disuse since that time, is covered with grass and is frequently impassable due to mud and weather conditions.

The mill mentioned in the reservation was located on the tract now owned by the plaintiffs. It began operation in the late seventeen hundreds and continued in commercial operation until 1934. It was torn down in 1950, and the mill race filled at the same time. In recent months, the defendant has erected signs at the entrance to the road telling everyone to keep out and has threatened to barricade it if the plaintiffs insist upon its use.

It is the contention of the defendant-appellant that the reservation involved did not grant an easement for all purposes incident to the access of the plaintiffs' property, but rather intended to grant ingress and egress over the road for the limited purpose of using and maintaining the mill and the mill race; and, that this right expired with their destruction. The lower court correctly rejected this position.

In *Nallin-Jennings Park Co. v. Sterling,* 364 Pa. 611, 73 A. 2d 390 (1950), at 615, we reaffirmed what was said in *Witman v. Stichter,* 299 Pa. 484, 488, 149 A. 725 namely that, " ' "In construing the grant or other instrument whereby the easement is created, the document itself, and that only, can, in the first instance, be looked at to discover the extent and nature

of the agreement and the terms of the grant. If on the face of the document no doubt arises that the words are used in their primary sense, and if, read in that sense, they are plain and unambiguous, the matter is concluded" Gale on Easements, page 80; Where the intention of the parties can be ascertained, nothing remains but to effectuate that intention: 2 Devlin on Real Estate 835; The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee: 2 Devlin, supra, quoting Salesbury v. Andrews, 19 Pick. 250, 252.' Cf. Thompson Trust, 348 Pa. 228, 35 A. 2d 261."

The lower court concluded that the grant involved in itself clearly manifested an intention to give to the "heirs and assigns" of John Boileau the right of general access over the road. With this, we completely agree, and affirm the construction placed thereon by the lower court, wherein it stated:

"The plain reading of the language reveals there is reserved to the heirs of John Boileau the 'use and privilege to cleanse and repair the race or water course to the mills' and also the 'use and privilege . . . of the road leading to said mills . . .' These are rights reserved for the heirs of John Boileau.

"Next, there are rights reserved to the heirs and assigns of John Boileau. First, the privileges '. . . forever on either side of the millrace to enter and drive the wagons, carts and other carriages, . . .' Following the word 'carriages' there is a comma indicating that the privileges are being separated, for there follows immediately: 'to mend and repair said race of mill road, also the privilege of using the surplus water to water his meadow . . .' These are three distinct privileges."

Assuming arguendo, however, that the language of the grant is ambiguous, the same result is inescapable. The intention of the parties at the time the

reservation was created is what primarily governs. If that intention is not clearly expressed, or cannot be gained from a reading of the writing itself, then the surrounding circumstances may be considered in ascertaining the true intent of the parties: *Weigand v. American Stores,* 346 Pa. 253, 29 A. 2d 484 (1943). Moreover, subsequent acts of the parties, tending to show the construction they themselves placed upon the writing are important in determining their intention if such is not clearly expressed therein: *Peoples N. Gas Co. v. Wire Co.,* 155 Pa. 22, 25 A. 749 (1893); *Cirotti v. Wassell,* 163 Pa. Superior Ct. 292, 60 A. 2d 339 (1948); and, *Birdsall-Friedman Co. v. Globe and Rutgers Ins. Co.,* 326 Pa. 404, 190 A. 924 (1937).

In the case at bar, the court factually found and the undisputed evidence abundantly supports the conclusion that continuously from at least 1900 (the reservation in question is contained in a deed given in the year 1904), the road has been used for general access purposes by the occupants of plaintiffs' property, their guests and trades people. Also, that despite knowledge of this use by the defendant's predecessor in title, whose title dates back to the year 1904, no objection was voiced until the defendant saw fit to do so in very recent years. These facts indicate to us, that at the time of the 1904 deed, the parties to the instrument were well aware that the road was being used for purposes not related to the mill. If it were intended to limit travel over the land for the mill purposes only, as appellant now contends, certainly it might reasonably be expected that an immediate objection to any unauthorized use would be forthcoming, shortly after the conveyance was effectuated. See, Restatement, Property, §483(d) (1944).

Decree affirmed, costs to be paid by the appellant.