393 A.2d 908

**George W. BAKER and Marie A. Baker, his wife, Appellees,**

**v.**

**Margaret DeBow ZINGELMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided Oct. 25, 1978.

---

**2.** It should also be recalled that appellant threatened Donna's life on several occasions after the rape.

442

Douglas W. Ferguson, Meadville, for appellant.

Mark D. Prather, Meadville, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from a Decree Nisi entered by the Court of Common Pleas of Crawford County in a boundary dispute. Appellants' exceptions to the decree were dismissed

by two judges on the court and this appeal followed. We affirm the decree of the lower court.

The finding of facts that were established by the chancellor are as follows. Appellant, Margaret DeBow Zingelman (Margaret), and appellee, Marie A. Baker, are sisters. Margaret and her deceased husband, Carl DeBow, owned a parcel of land known as the Lakeland Allotment via an unrecorded plan of lots dated 1953. The land was mostly farmland, and appellant and her late husband lived in the farmhouse and operated an antique shop in the barn behind their house. There were several other sheds and garages on their property. In 1968, appellant and her late husband built a new home west of the land here in question and moved there. It was only after the death of Carl DeBow, in 1971, that any problem concerning the Lakeland Allotment arose.

The testimony of the appellees, Marie Baker and her husband, states that appellant asked them to leave their Cleveland, Ohio home and move to the farmhouse on the Lakeland Allotment and operate the antique shop. Based on this inducement, a deed to the property was prepared by Margaret conveying the property to her sister and her husband. Margaret allegedly "walked off" (measured) the land Marie and her husband were to receive and asked if they thought it was sufficient footage to clear the buildings located on the land. Margaret opined that if the land she measured off was not sufficient to include the buildings, "we can clear it up later." The deed prepared by Margaret began at "a point where the east line of the proposed Michigan Avenue intersects the south line of West Erie Street" and then follows the directional and distance description matching an unnumbered lot on the unrecorded plan. Michigan Avenue is an unopened street, which, Margaret admitted, she did not know exactly where it began when she prepared the deed. The deed carried a consideration of $10.00, which was never paid, although the value of the property stated in the deed was $5,000.

Based on this conveyance in 1971, Marie and George Baker moved into the farmhouse and reopened and operated the antique shop in the barn. Sometime in 1973 George Baker became upset with Margaret parking her truck in the garage which the Bakers claim is located on their property.[1] There was a falling out between the families about this time. Margaret informed the Bakers that part of the barn, the garage, and sheds located on the land extended onto her adjacent land. By early 1975, Margaret's attorney informed the Bakers that the part of the barn which projected onto the appellant's property would be forcibly removed unless the appellees chose to purchase for a sum of $10,000 the strip of property which would clear up the location problem of the buildings. The Bakers then brought this suit to enjoin Margaret from parking her truck in the garage and from cutting off part of the barn.

At the trial, the testimony of two reputable surveyors disclosed that all of one shed and garage and a portion of another shed and 13 feet of the barn extended onto Margaret's property. The lower court, however, enjoined Margaret from any further trespass and ordered her to convey to the Bakers the strip of land which would then place the buildings on Baker property, in order to effectuate the original intent of the parties in their conveyance of 1971.

On appeal, the major issue before us is whether the lower court judge committed reversible error in permitting the use of parole evidence at the trial to determine the intent of the parties, even where the language of the deed was clear on its face. In our review of this issue,

> "the findings of a Chancellor have the effect of a jury verdict and, when affirmed by the court en banc, will not be reversed if there is adequate evidence to sustain them and if they are not premised on erroneous inferences and deductions or an error of law. . . . [O]n appeal, the question is not whether the appellate court would have

---

1. In 1973, Margaret married her present husband, Mr. Zingelman. The parties testified this remarriage somehow added to the family dispute.

reached the same conclusion, but whether the evidence is sufficient to support the chancellor's conclusion." *Bokoch v. Noon,* 420 Pa. 80, 85, 215 A.2d 899, 901 (1966). Based on this standard, we conclude there is sufficient evidence to support the chancellor's conclusions and no reversible error was committed.

Appellant's argument stems from the legal principles and cases that state when the language of a deed is clear and unambiguous, the intent of the parties must be gleaned solely from the instrument. See *Conveyance of Land Belonging To DuBois,* 461 Pa. 161, 335 A.2d 352 (1975). Were a portion of a building is not included in the description of the deed and it is not clear from the deed that the parties meant for the entire building to pass, only that portion of the building passes that is covered in the description. *Nestico v. Carnucci,* 39 Northumberland L.J. 39 (1966). In the case before us, appellant argues that since the description in the deed was clear, the surveyors were able to plot the land despite resort to the unrecorded plan of lots and other monuments not in the deed. The appellant further argues that since there was no mention of any of the buildings in the deed, the judge should not have allowed parole evidence concerning the alleged inducement by Margaret for her sister to move to Pennsylvania. *Goldsmith v. Means,* 104 Pa.Super. 571, 158 A. 596 (1931).

Although this is a correct statement of the law, we must remember the lower court sat in equity. "It is a general proposition of equity that when a person grants a thing, he intends to grant also that without which the thing cannot be enjoyed. We must assume the parties intended a reasonable result." *Bokoch v. Noon,* 420 Pa. at 84, 215 A.2d at 901. The description in the deed before us was not prepared by a professional engineer, but by appellant who admitted she did not know exactly where Michigan Avenue began at the time of the deed preparation. There very easily could have been a mistake or ambiguity in the deed concerning the description, regardless of the omission of the word "building." Where such an ambiguity exists, the sur-

rounding circumstances may be considered to determine the intent of the parties, and the subsequent acts of the parties are important to manifest their intentions. *Ryan v. Hudak,* 409 Pa. 211, 185 A.2d 570 (1962); *Taylor v. Gross,* 195 Pa.Super. 225, 171 A.2d 613 (1971). The actions of the parties subsequent to the deed were that the Bakers moved into the farmhouse and operated the antique shop in the barn. They obviously relied on the deed as having conveyed to them their interest in the property and in the buildings. It was only after the sisters' "falling out" that the boundary dispute arose. The proposed sale of the strip of land which would clear the building at a price of $10,000 seems extremely unreasonable in light of the fact that the deed of 1971 conveyed the majority of the land without any consideration passing.

Even if the language of the deed can be construed as being precise and clear on its face, the cases do make exceptions where encroachments are minor and where it would be illogical and unreasonable for the grantor to have conveyed only part of buildings. *Podlesny v. Baranko,* 82 Pa.D. & C. 281 (1952). Here, appellees were living in the house and operating the antique shop in the barn unhindered until the argument occurred. It is extremely unlikely that 13 feet of the barn, one garage and part of two other sheds were deliberately excluded from the conveyance.

Taking all these facts into consideration, we must agree with the lower court that the appellant intended to convey sufficient footage to cover the house, barn, and related buildings to her sister and her husband at the time of the original deed in 1971.

Decree affirmed.

JACOBS, President Judge, concurs in the result.

SPAETH, J., files a concurring opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I submit that the majority treats "ambiguity" and "mistake" as synonyms. In my view, there was ambiguity because the surveyors had to resort to using landmarks not included in the deed, and mistake because the parties to the deed thought that all the buildings were included, but they weren't. On either ground—ambiguity or mistake—parol evidence was admissible.