J-A09023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DARRYL M. KOCH AND KIM T. NOLL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDREW T. COSCIA AND | : | No. 1220 WDA 2017 |
| KATHLEEN M. COSCIA | : | |

Appeal from the Order Entered August 18, 2017
In the Court of Common Pleas of McKean County Civil Division at No(s):
557-CD-2014

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED NOVEMBER 21, 2018**

Appellants, Darryl M. Koch and Kim T. Noll, appeal from an Order denying Appellants the right to an easement over property that Appellees, Andrew T. Coscia and Kathleen M. Coscia, own.  Appellants claim that they have a right to an easement on Appellees' properties as a result of language in a deed, a grant of an easement, and a settlement stipulation that prior owners of the respective properties entered into in 1976.  We conclude that, although the easements existed at one point, a prior owner of Appellants' property as part of a settlement of litigation relinquished his right to convey the easement.  Thus, Appellants have no right to that easement and we affirm the trial court's Order.

**Factual Background**

We glean the facts and procedural posture of this case from the record. In October 2006, Appellants purchased one hundred forty-seven acres of property in McKean County from C&S Lumber Company, Inc.[1]  There is no public road bordering Appellants' property.  Appellants contend that the prior owners of Appellees' property granted an easement over Appellees' property and the prior owner of Appellants' property had the right to convey the easement to subsequent owners of Appellants' property.

The dispute over the easements began in the 1970's.  Mr. Graziano at that time owned the Appellants' property, which is north of the property that Appellees own.  Mr. Appleby owned the lot that Appellees now own.  This lot is the lot over which Appellants claim that they have an easement (referred to as the "Southern Lot").  The issue in this case is whether Appellants still have a right to use the easements on the Southern Lot.

On August 12, 1975, Mr. Appleby conveyed the Southern Lot to Mr. Heil. The Deed reserved two easements. The first easement, and the one most relevant to this dispute, is an easement on the Southern Lot that runs "from a point in a fence corner near a barn along an existing roadway and over and across a bridge proposed to be constructed by grantees across Newell Creek

_____

[1] The chain of title for Appellants' property is as follows: in 1960, Renneret conveyed the property to Graziano; in 1983, Graziano conveyed the property to Van Voorhis; in 1988, Van Voorhis conveyed the property to Ritchie Logging; in 2001, Ritchie Logging conveyed the property to C & S Lumber; and in 2006, C & S Lumber conveyed the property to Appellants.

to remaining lands of grantors." ("Northern Right of Way"). McKean County Deed Book 493, page 651; R.R. 39a and 426a.

The other easement for the Southern Lot was along a right of way granted to Robert J. Pietrarola ("Peitrarola Easement"). *Id*. The parties, including Appellants' expert, have been unable to locate any documents regarding the location of Peitrarola Easement. R.R. 241a.

In May 1976, Mr. Appleby, after selling the Southern Lot, confirmed the grant of three easements to Mr. Graziano. The first was an easement on another lot not in dispute in this case. The other two easements were on the Southern Lot and were the easements that the parties described in the conveyance of the Southern Lot. In other words, the document confirmed the existence of the Northern Right of Way and the Pietratola Easement. Deed Book 498, page 617; R.R. 324a.

Mr. Graziano instituted litigation against Appellees' predecessor regarding the use of the easements. On September 24, 1976, the parties settled the litigation by entering into a stipulation regarding the existence of the easements on the Southern Lot ("1976 Stipulation"). In the stipulation, the parties acknowledged the existence of the Northern Right of Way as well as Mr. Graziano's right to use "lands leading from Newell Creek Road to lands presently owned by Paul Appleby."[2]

_____

[2] We note that Mr. Appleby sold the lands earlier that year and did not own them at the time the parties entered into the 1976 Stipulation.

Thus, this portion of the 1976 Stipulation addressed the Northern Right of Way and an easement running south of the Northern Right of Way to the southern edge of Appellees' property. ("Southern Right of Way"). Collectively, these two easements made up the easement that the trial court refers to as the "Valley Drive Right of Way."

The 1976 Stipulation also provided that the Appellees' predecessors would grant to Mr. Graziano an easement on the western portion of their property ("Western Easement").

The 1976 Stipulation also provided that Mr. Graziano would not convey either the Valley Drive Right of Way or the Western Easement to another person. It is the interpretation of this provision that is the subject of this litigation.

In its entirety, the 1976 Stipulation provides as follows:

1. That August B. Graziano, ("Graziano") his heirs, successors and assigns in common with all others having the like right have full and free right and liberty at all times hereafter to pass and repass along a presently existing right-of-way across Richard J. Coscia and Marjorie E. Coscias's ("the Coscias") lands leading from Newell Creek Road to lands presently owned by Paul Appleby, said right-of-way having been reserved by Paul G. Appleby et ux in deed dated July 12, 1975 and recorded in McKean County Deed Book Vol. 493 at page 657.[3]

2. Graziano agrees for himself, his heirs, successors and assigns that he will not use the presently existing right-of-way for any commercial development such as but not limited to gas or oil

---

[3] The parties acknowledge a typo in this paragraph of the 1976 Stipulation. The deed referred to here is dated August 12, 1975 and appears on page 651 of McKean County Deed Book 493. R.R. at 39a and 426a.

exploration or removal, gravel removal, logging, or coal trucking but will use a right-of-way to be granted exclusively for that purpose by the Coscias.

3. The Coscias agree for themselves, their heirs, successors and assigns to designate a roadway around the western perimeter of their farm field for use of Graziano, his heirs, successors or assigns for such heavy duty commercial truck use that would be readily accessible to Graziano, his heirs, successors and assigns and with a minimum of damage to grantors at the time that Graziano, his heirs, successors or assigns should so desire to conduct such commercial trucking from the Graziano property. The roadway so designed for commercial truck use shall be used for both ingress from Newell Creek Road to lands presently owned by Graziano as well as regress from the Graziano lands to Newell Creek Road for said commercial trucking operations. Said roadway shall be twelve (12) feet wide.

**4. Graziano agrees for himself, his heirs, successors and assigns that both of the aforementioned rights of way shall be used exclusively for ingress and regress to the premises conveyed to Graziano et ux by deed dated November 10, 1960 and recorded in McKean County Deed Book Vol. 395 at page 725 from Newell Creek Road and that said rights of way will not be assigned, transferred, or conveyed to any other person.**

1976 Stipulation (emphasis added).

Thus, the issue in this case is whether the trial court properly concluded that Mr. Graziano's agreed in the 1976 Stipulation to relinquish his right to convey the Valley Drive Right of Way.

**Procedural Background**

This case has a long procedural history beginning in 2008, when Appellants filed their first Declaratory Judgment Action, requesting that the trial court interpret the 1976 Stipulation. During the course of that litigation, Appellants filed a Motion *in Limine,* invoking the Dead Man's Act to preclude

the testimony of any witnesses regarding the intent of the parties when they entered into the 1976 Stipulation. Judge John M. Cleland denied the Motion *in Limine* and opined that the 1976 Stipulation was not ambiguous, concluding, "[s]ince the stipulation referred to **specifically limited** August B. Graziano's power to convey his right of way, he had no power to convey that interest." (Memorandum Opinion, 10/31/2011, at 2.) (emphasis added). Appellants discontinued their action.

On July 7, 2014, Appellants filed this action, again seeking a declaratory judgment that they have a right to use the Valley Drive Right of Way. Appellants relied upon three documents to support their position that they have the right to use the Valley Drive Right of Way:

- 1975 Deed for the transfer of the Southern Lot which describes, *inter alia*, the Northern Right of Way (Deed Book 493, page 651);

- 1976 grant of an easement which, *inter alia*, confirms the existence of on the Northern Right of Way. (Deed Book 498, page 617); and

- 1976 Stipulation which confirms the existence of the Northern Right of Way and describes a right of way along the entire length of Appellees' property.

Appellees filed an Answer to the Complaint, arguing that Mr. Graziano agreed in the 1976 Stipulation that he would not convey his right to use the Valley Drive Right of Way. The parties filed Motions for Summary Judgment.

The court denied Appellants' motion and partially granted Appellees' Motion, finding that Appellants did not have an easement by necessity or implication.

On November 29, 2016, the Honorable Christopher G. Hauser held a bench trial. On March 29, 2017, the trial court entered a verdict against Appellants, interpreting the 1976 Stipulation as restricting Mr. Graziano's right to convey the Valley Drive Right of Way. In denying Appellants' requested relief, the trial court opined that the 1976 Stipulation unambiguously restricted Mr. Graziano's right to convey the Valley Drive Right of Way:

> Indeed, the matter is unique as there is an earlier Memorandum Order by this [c]ourt which has determined that the 1976 Stipulation is not ambiguous because it specifically limits Graziano's power to convey his interest in the right-of-way. That Memorandum Order may not strictly require comity from this [c]ourt as the previous Memorandum Order was not a final Order on the issue of interpreting the 1976 Stipulation. Rather, the Memorandum Order declared the 1976 Stipulation not to be ambiguous because of the interpretation the court made. While *stare decisis* or *res judicata* may not apply in the strictest sense, the Memorandum Order is very persuasive to this Court. The Memorandum Order… found the Stipulation not to be ambiguous because the specific restriction should be given weight over more general language…. **Here, too, [this] [c]ourt is persuaded that the specific language restricting Graziano's right to convey his rights under the 1976 Stipulation is clear and must be given meaning over the general or implicit language that both parties could convey their rights under the 1976 Stipulation**.

Trial Ct. Op., 3/29/17, at 5-6 (unpaginated) (emphasis added).

Appellants filed Post-Trial Motions which the court denied. On August 18, 2017, the court entered judgment in favor of Appellees.

This timely appeal followed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants raise the following issues for our review:

1. Did the trial court err as a matter of law when it construed the 1976 Stipulation in such a manner that failed to give effect to all of its provisions, and instead ignored and annulled certain provisions indicating that the rights and responsibilities under the 1976 Stipulation would go on in perpetuity and not end along with the ownership of Mr. Graziano, leading to the absurd result of landlocking [Appellants'] Property?

2. Did the Trial Court err as a matter of law when it construed the 1976 Stipulation as terminating an already existing easement, even though the 1976 Stipulation itself enumerates Mr. Graziano's rights to use said already existing easement?

3. Did the Trial Court err as a matter of law when it construed Appellants' claims to rights-of-way as based solely on the 1976 Stipulation, despite the fact that Appellants relied upon several alternative sources of title?

Appellants' Brief at 6.

**Standard and Scope of Review**

In reviewing a trial court's determination following a bench trial, the appellate court's role is to "determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." *Porter v. Kalas*, 597 A.2d 709, 711-12 (Pa. Super. 1991) (citation omitted). An appellate court must give the findings of the trial judge in a non-jury case the same weight and effect on appeal that the appellate court gives the verdict of a jury. *Id*. at 712 (citation omitted).

Additionally, appellate courts must review the evidence in the light most favorable to the verdict winner. *Id*.

When an appellate court reviews whether a trial court properly interpreted a contract, the appellate court must only review questions of law. Moreover, the appellate court's scope of review is plenary. *Liddle v. Scholze*, 768 A.2d 1183, 1185 (Pa. Super. 2001).

### The Trial Court Properly Interpreted the 1976 Stipulation As Precluding Mr. Graziano from Conveying His Right to Use the Valley Drive Right of Way.

Appellant first argues that the trial court erred in interpreting the 1976 Stipulation as limiting Mr. Graziano's right to convey the right to use the Valley Drive Right of Way. Appellant further argues that such an interpretation leads "to the absurd result of land locking" Appellants' property."[4] Appellants' Brief at 15-18; 27-33.

Generally, in construing stipulations, "the rules for construction of contracts are applicable, with the primary rule being to ascertain and give effect to the intention of the parties." *Longenecker v. Matway*, 462 A.2d 261, 263 (Pa. Super. 1983). "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to

---

[4] Although Appellants argue that the trial court's interpretation results in landlocking their property, Appellants have not raised on appeal the claim that Appellants are entitled to an easement by necessity. Thus, we will not address it.

give effect to the parties' understanding." ***Humberston v. Chevron U.S.A., Inc.***, 75 A.3d 504, 510 (Pa. Super. 2013) (citation omitted).

With respect to a document creating an easement, the court should review the document itself in the first instance to discover the extent and nature of the agreement and the terms of the grant. ***Ryan v. Hudak***, 185 A.2d 570, 571-72 (Pa. 1962). If the document's words are used "in their primary sense" and "are plain and unambiguous," the writing speaks for itself and the court does not need to consider any further evidence to ascertain the parties' understanding. ***Id***. at 572.

Most important to our analysis is the principle that specific language in a contract controls over general language. ***Southwestern Energy Production Co. v. Forest Resources, LLC***, 83 A.3d 177, 187 (Pa. Super. 2013).

In this case, the trial court properly found that Mr. Graziano agreed in the 1976 Stipulation not to convey his right to use the Valley Drive Right of Way to any purchasers of his property. The relevant section of the 1976 Stipulation provides:

> Graziano agrees for himself, his heirs, successors and assigns that both of the aforementioned rights of way shall be used exclusively for ingress and regress to the premises conveyed to Graziano et ux by deed dated November 10, 1960 and recorded in McKean County Deed Book Vol. 395 at page 725 from Newell Creek Road and **that said rights of way will not be assigned, transferred, or conveyed to any other person.**

1976 Stipulation, ¶ 4 (emphasis added). The clear and unambiguous language of this provision is that Mr. Graziano relinquished his right to assign, transfer, or convey his right to use the Valley Drive Right of Way to any other person.

Mr. Graziano's agreement to relinquish his right to convey the Valley Drive easement was in the context of the settlement of litigation. Thus, Mr. Graziano agreed to this relinquishment in exchange for other benefits he received when he agreed to settle the litigation. We see no legal basis to disturb this settlement.

Appellants argue that because other provisions in the 1976 Stipulation use the terms "heirs, successors and assigns," the parties intended to permit Mr. Graziano to convey his right to use the Valley Drive Right of Way to future purchasers. Appellant's Brief at 15-16. The specific provision, however, that addresses the issue in this case, i.e., whether Mr. Graziano had the right to convey the right to use the easement, is specific and unambiguous. It unambiguously provides that Mr. Graziano relinquished his right to convey the right to use the Valley Drive Right of Way. Any other interpretation of the 1976 Stipulation requires us to ignore the precise provision that addresses the conveyance issue.

Appellants minimize this provision regarding the right to transfer the easement by describing it as "one partial sentence." Appellants' Brief at 15. This "partial sentence," however, is the phrase that addresses Graziano's right to transfer his right to the Valley Drive Right of Way. The brevity of the phrase

- 11 -

is not a reason to ignore a provision that specifically addresses the issue of the right to convey the easement and is a material term of the settlement of the litigation.

Thus, we conclude that the trial court, using the principle that specific language in a contract controls general language, correctly concluded that Mr. Graziano, in the 1976 Stipulation and as a part of the settlement of litigation, relinquished his right to convey the Valley Drive Right of Way.

Appellants further argue that this interpretation of the 1976 Stipulation results in their property being landlocked. As an initial matter, the trial court found otherwise by concluding that "the property is **NOT** landlocked by the Court's decision, as [Appellants'] property has another right of way to the east that runs toward St. Mary's Church." Trial Ct. Op., 10/13/17, at 5 (unpaginated).

Upon reviewing factual determinations of the factfinder, we must accept such determinations and reasonable inferences from the determination so long as the record supports such determinations. *Porter v. Kalas*, *supra*. We can not on appeal place different weight on a fact or inference that the factfinder placed on it. *Id*. at 712.

In this case, Mr. Lang, Richard Coscia, and Andrew Coscia testified in a manner that supports the trial court's determination that Appellants' property is not landlocked. *See* R.R. 251-252a, R.R. 267-268a, and R.R. 294-95a. Furthermore, Mr. Couldron granted to Mr. Graziano an easement on Mr.

Couldron's property that leads eastward from Appellants' property to a roadway. *See* Deed Book 498, p. 331; RR. 320a. Thus, the evidence supports the trial court's determination that Appellants' property is not landlocked and its owners have access to Newell Creek Road by heading eastward towards St. Mary's Church.

To accept Appellants' challenges to this factual conclusion would require this court to place weight on different portions of Mr. Lang's testimony and ignore the testimony of Andrew and Richard Coscia. Appellants' Brief at 29-30. We cannot and will not do so.

Additionally, we find distinguishable the cases that Appellants rely upon to support their legal conclusion that a trial court must consider whether property is landlocked when interpreting the existence of an easement. As an initial matter, these cases do not involve situations in which a prior owner, as part of the settlement of litigation, unambiguously relinquished his right to convey an easement. There is no legal authority to vacate a relinquishment of an easement, which was part of the settlement of litigation, because the property dependent on the easement is landlocked.

Additionally, the cases that Appellants rely upon involve interpreting the use, and not the existence, of an easement. In particular, in *Piper v. Mowris*, 351 A.2d 635 (Pa. 1976), the Pennsylvania Supreme Court, as an initial matter, interpreted language in deeds and concluded that the deeds granted Mr. Mowris an "express easement by way of reservation." *Id.* at 638. The

Supreme Court did not consider in its analysis of the existence of an easement whether Mr. Mowris' land was landlocked. Rather the Supreme Court considered that Mr. Mowris' property was landlocked when analyzing whether his using vehicles on the easement "would be an unreasonable use or unreasonably interfere with use of the servient tenement… ." *Id*. at 641.

Similarly, in *Lease v. Doll*, 403 A.2d 558 (Pa. 1979), the Pennsylvania Supreme Court interpreted language in a deed that addressed the use, and not the existence, of an easement. Although the Supreme Court considered that the servient estate was landlocked, it considered this fact for determining a reasonable use of the easement, not for the creation of an easement. To accept Appellant's interpretation of these cases would permit the creation of an easement whenever a property is landlocked. Since there is no legal authority to do so, we must reject the applicability of these cases.

Appellants further argue that the trial court erred by observing in its Opinion that Appellants' property "is not landlocked specifically because of the present-day existence of the Commercial Right-of-Way." Appellants' Brief at 33. Although the record does not support the court's observation, the trial court properly found that Appellants have a right of way by Saint Mary's Church. *See* Tr. Ct. Op., 10/13/2017, at 5 (unpaginated). Our review of the record confirms that since Appellant has at least one right of way to reach a public road, the trial court's misstatement has no legal significance.

Thus, we see no reason to disturb the trial court's interpretation of the 1976 Stipulation that Mr. Graziano relinquished his right to convey the Valley Drive Right of Way as well as the trial court's finding that Appellants' property is not landlocked.

**Although the 1976 Stipulation Acknowledged the Existence of the Valley Drive Right of Way, Mr. Graziano Relinquished His Right to Transfer It.**

In their second and third issues, Appellants argue that since the 1976 Stipulation as well as other documents granted Appellants the right to use the Valley Drive Right of Way, the trial court erred in not enforcing the grant of those easements. In particular, Appellants argue that the 1976 Stipulation "memorialized the existence of the recorded Valley Drive Right of Way." Appellant's Brief at 34. Appellants further argue that "there was both recorded and visible notice of the Valley Drive Right of Way." *Id*.

Similarly, Appellants argue that they still have the right to the Valley Drive Right of Way as a result of language in "Record Book 498" and "Record Book 493." Appellants' Brief at 36.

Although the 1976 Stipulation as well as the other documents memorialize the existence of the Valley Drive Right of Way, as discussed above, Mr. Graziano, as part of the settlement of litigation, relinquished his right to convey these easements in the 1976 Stipulation. *See* 1976 Stipulation, ¶ 4. Since Mr. Graziano relinquished his right to convey the

easements comprising the Valley Drive Right of Way, Appellants have no rights to them.

Order affirmed.

Judge Murray joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2018